**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| CALIFORNIA PIZZA KITCHEN, INC., *ET AL.*,[1] | ) | Case No. 20-33572 (MI) |
| | ) | |
| Debtors. | ) | (Joint Administration Requested) |
| | ) | |

**JOINT CHAPTER 11 PLAN OF REORGANIZATION**
**OF CALIFORNIA PIZZA KITCHEN, INC. AND ITS DEBTOR AFFILIATES**

---

**THIS PLAN IS BEING SUBMITTED FOR APPROVAL BUT HAS NOT BEEN APPROVED BY THE BANKRUPTCY COURT. THIS IS NOT A SOLICITATION OF ACCEPTANCE OR REJECTION OF THE PLAN. ACCEPTANCE OR REJECTION MAY NOT BE SOLICITED UNTIL A DISCLOSURE STATEMENT HAS BEEN APPROVED BY THE BANKRUPTCY COURT. THE INFORMATION IN THE PLAN IS SUBJECT TO CHANGE. THIS PLAN IS NOT AN OFFER TO SELL ANY SECURITIES AND IS NOT SOLICITING AN OFFER TO BUY ANY SECURITIES.**

---

Joshua A. Sussberg, P.C. (*pro hac vice* pending)
Matthew C. Fagen (*pro hac vice* pending)
Francis Petrie (*pro hac vice* pending)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:       (212) 446-4800
Facsimile:       (212) 446-4900

Matthew D. Cavenaugh (TX Bar No. 24062656)
Kristhy M. Peguero (TX Bar No. 24102776)
Genevieve Graham (TX Bar No. 24085340)
Veronica A. Polnick (TX Bar No. 24079148)
**JACKSON WALKER L.L.P.**
1401 McKinney Street, Suite 1900
Houston, Texas 77010
Telephone:       (713) 752-4200
Facsimile:       (713) 752-4221

*Proposed Co-Counsel to the Debtors and Debtors in Possession*

Dated:  July 30, 2020

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  California Pizza Kitchen, Inc. (0623); California Pizza Kitchen of Annapolis, Inc. (4806); CPK Holdings Inc. (2486); CPK Hospitality, LLC (3536); CPK Hunt Valley, Inc. (6751); CPK Management Company (1196); CPK Spirits, LLC (3614); and CPK Texas, LLC (3574).  The location of the Debtors' service address in these chapter 11 cases is: 12181 Bluff Creek Drive, 5th Floor, Playa Vista, California 90094.

## TABLE OF CONTENTS

Page

INTRODUCTION ...................................................................................................................................1

**ARTICLE I. DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME,
GOVERNING LAW, AND OTHER REFERENCES**................................................................1
    A.    *Defined Terms* ..............................................................................................................1
    B.    *Rules of Interpretation* ...............................................................................................13
    C.    *Computation of Time* ..................................................................................................13
    D.    *Governing Law* ...........................................................................................................14
    E.    *Reference to Monetary Figures* ..................................................................................14
    F.    *Reference to the Debtors or the Reorganized Debtors* ...............................................14
    G.    *Controlling Document* .................................................................................................14
    H.    *Consent Rights* ............................................................................................................14

**ARTICLE II. ADMINISTRATIVE CLAIMS, DIP FACILITY CLAIMS, AND PRIORITY CLAIMS**.........14
    A.    *Administrative Claims* .................................................................................................14
    B.    *Professional Fee Claims* ..............................................................................................15
    C.    *DIP Facility Claims* .....................................................................................................16
    D.    *Priority Tax Claims* .....................................................................................................16
    E.    *Statutory Fees* .............................................................................................................16

**ARTICLE III. CLASSIFICATION, TREATMENT, AND VOTING OF CLAIMS AND INTERESTS**.........16
    A.    *Classification of Claims and Interests* ........................................................................16
    B.    *Treatment of Classes of Claims and Interests* ............................................................17
    C.    *Special Provision Governing Unimpaired Claims* ......................................................20
    D.    *Elimination of Vacant Classes* ...................................................................................20
    E.    *Voting Classes; Presumed Acceptance by Non-Voting Classes* ..................................20
    F.    *Subordinated Claims and Interests* .............................................................................20
    G.    *Intercompany Interests* ...............................................................................................20
    H.    *Controversy Concerning Impairment* .........................................................................21
    I.    *Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code* .........................21

**ARTICLE IV. MEANS FOR IMPLEMENTATION OF THE PLAN** ..........................................................21
    A.    *General Settlement of Claims and Interests* ................................................................21
    B.    *Restructuring Transactions* .........................................................................................21
    C.    *Sources of Consideration for Plan Distributions* .......................................................22
    D.    *New Shareholders Agreement* .....................................................................................23
    E.    *Exemption from Registration Requirements* ...............................................................23
    F.    *Corporate Existence* ....................................................................................................23
    G.    *Corporate Action* ........................................................................................................23
    H.    *Vesting of Assets in the Reorganized Debtors* ...........................................................24
    I.    *Cancellation of Notes, Instruments, Certificates, and Other Documents* ..................24
    J.    *Effectuating Documents; Further Transactions* .........................................................24
    K.    *Exemption from Certain Taxes and Fees* ....................................................................24
    L.    *New Organizational Documents* .................................................................................25
    M.    *Directors and Officers* ................................................................................................25
    N.    *Management Incentive Plan* .........................................................................................26
    O.    *Preservation of Causes of Action* ...............................................................................26
    P.    *Release of Avoidance Actions* .....................................................................................26
    Q.    *Alternative Transaction* ..............................................................................................26

**ARTICLE V. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES** ....................29
    A.    *Assumption of Executory Contracts and Unexpired Leases*.......................................29

| | | | |
|---|---|---|---|
| B. | Claims Based on Rejection of Executory Contracts or Unexpired Leases | ...................................... | 30 |
| C. | Cure of Defaults and Objections to Cure and Assumption | ................................... | 30 |
| D. | Director & Officer Liability Insurance | .......................................................... | 30 |
| E. | Employment Obligations and Programs | ........................................................ | 31 |
| F. | Modifications, Amendments, Supplements, Restatements, or Other Agreements | ........ | 31 |
| G. | Reservation of Rights | .............................................................................. | 31 |
| H. | Nonoccurrence of Effective Date | ................................................................ | 31 |
| I. | Contracts and Leases Entered Into After the Petition Date | ............................... | 31 |

**ARTICLE VI. PROVISIONS GOVERNING DISTRIBUTIONS** ............................................. **32**

| | | | |
|---|---|---|---|
| A. | Timing and Calculation of Amounts to Be Distributed | ................................... | 32 |
| B. | Distribution Agent | .................................................................................. | 32 |
| C. | Rights and Powers of Distribution Agent | .................................................... | 32 |
| D. | Delivery of Distributions | .......................................................................... | 32 |
| E. | Manner of Payment | ................................................................................. | 33 |
| F. | Compliance Matters | ................................................................................ | 33 |
| G. | No Postpetition or Default Interest on Claims | ............................................. | 34 |
| H. | Allocation Between Principal and Accrued Interest | ....................................... | 34 |
| I. | Setoffs and Recoupment | ........................................................................... | 34 |
| J. | Claims Paid or Payable by Third Parties | .................................................... | 34 |

**ARTICLE VII. THE PLAN ADMINISTRATOR** ............................................................. **35**

| | | | |
|---|---|---|---|
| A. | The Plan Administrator | ............................................................................. | 35 |
| B. | Wind Down | ........................................................................................... | 36 |
| C. | Exculpation, Indemnification, Insurance, and Liability Limitation | ................... | 37 |
| D. | Tax Returns | ........................................................................................... | 37 |
| E. | Reserves Administered by the Plan Administrator | ......................................... | 37 |

**ARTICLE VIII. PROCEDURES FOR RESOLVING DISPUTED CLAIMS AND INTERESTS** ...................... **37**

| | | | |
|---|---|---|---|
| A. | Disputed Claims Process | .......................................................................... | 37 |
| B. | Claims Administration Responsibilities | ...................................................... | 37 |
| C. | Estimation of Claims and Interests | ........................................................... | 38 |
| D. | Adjustment to Claims Register Without Objection | ........................................ | 38 |
| E. | Time to File Objections to Claims | ............................................................. | 38 |
| F. | No Distributions Pending Allowance | .......................................................... | 38 |
| G. | Distributions After Allowance | ................................................................... | 38 |
| H. | No Interest | ............................................................................................ | 38 |
| I. | Single Satisfaction of Claims | .................................................................... | 39 |
| J. | Tax Treatment of Claim Distribution Amounts | ............................................ | 39 |

**ARTICLE IX. SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS** ...................... **39**

| | | | |
|---|---|---|---|
| A. | Compromise and Settlement of Claims, Interests, and Controversies | ................ | 39 |
| B. | Discharge of Claims and Termination of Interests | ........................................ | 39 |
| C. | Release of Liens | ..................................................................................... | 40 |
| D. | Releases by the Debtors | ........................................................................... | 40 |
| E. | Releases by Holders of Claims and Interests of the Debtors | ........................... | 40 |
| F. | Exculpation | ........................................................................................... | 41 |
| G. | Injunction | ............................................................................................. | 41 |
| H. | Protection Against Discriminatory Treatment | .............................................. | 42 |
| I. | Recoupment | ........................................................................................... | 42 |
| J. | Reimbursement or Contribution | ................................................................ | 42 |
| K. | Term of Injunctions or Stays | ................................................................... | 42 |
| L. | Document Retention | ............................................................................... | 42 |

**ARTICLE X. CONDITIONS PRECEDENT TO THE EFFECTIVE DATE** ...................................... **43**

| | | | |
|---|---|---|---|
| A. | Conditions Precedent to the Effective Date. | ................................................ | 43 |

|     |     |     |     |
| --- | --- | --- | --- |
| *B.* | *Waiver of Conditions Precedent* | .......................................................... | 44 |
| *C.* | *Substantial Consummation* | .......................................................... | 44 |
| *D.* | *Effect of Non-Occurrence of Conditions to Consummation* | .......................................................... | 44 |

**ARTICLE XI. MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN** ............................ **44**

| | | | |
| --- | --- | --- | --- |
| *A.* | *Modification of Plan* | .......................................................... | 44 |
| *B.* | *Effect of Confirmation on Modifications* | .......................................................... | 44 |
| *C.* | *Revocation or Withdrawal of Plan* | .......................................................... | 44 |

**ARTICLE XII. RETENTION OF JURISDICTION** ........................................................................ **45**

**ARTICLE XIII. MISCELLANEOUS PROVISIONS** .................................................................... **46**

| | | | |
| --- | --- | --- | --- |
| *A.* | *Immediate Binding Effect* | .......................................................... | 46 |
| *B.* | *Additional Documents* | .......................................................... | 46 |
| *C.* | *Statutory Fees* | .......................................................... | 46 |
| *D.* | *Reservation of Rights* | .......................................................... | 47 |
| *E.* | *Successors and Assigns* | .......................................................... | 47 |
| *F.* | *Service of Documents* | .......................................................... | 47 |
| *G.* | *Entire Agreement* | .......................................................... | 48 |
| *H.* | *Plan Supplement Exhibits* | .......................................................... | 48 |
| *I.* | *Non-Severability* | .......................................................... | 48 |
| *J.* | *Votes Solicited in Good Faith* | .......................................................... | 49 |
| *K.* | *Waiver or Estoppel* | .......................................................... | 49 |
| *L.* | *Closing of Chapter 11 Cases* | .......................................................... | 49 |

# INTRODUCTION

California Pizza Kitchen, Inc., and its affiliated debtors and debtors in possession in the above-captioned chapter 11 cases (each a "Debtor" and, collectively, the "Debtors") propose this joint plan of reorganization (the "Plan") for the resolution of the outstanding Claims against and Interests in the Debtors pursuant to chapter 11 of the Bankruptcy Code. Capitalized terms used in the Plan and not otherwise defined shall have the meanings set forth in Article I.A of the Plan. Although proposed jointly for administrative purposes, the Plan constitutes a separate Plan for each Debtor for the resolution of outstanding Claims and Interests pursuant to the Bankruptcy Code. Each Debtor is a proponent of the Plan within the meaning of section 1129 of the Bankruptcy Code. The classifications of Claims and Interests set forth in Article III of the Plan shall be deemed to apply separately with respect to each Plan proposed by each Debtor, as applicable. The Plan does not contemplate substantive consolidation of any of the Debtors. Reference is made to the Disclosure Statement for a discussion of the Debtors' history, business, properties and operations, projections, risk factors, a summary and analysis of this Plan, and certain related matters.

ALL HOLDERS OF CLAIMS AND INTERESTS ARE ENCOURAGED TO READ THE PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY, PARTICULARLY HOLDERS OF CLAIMS AND INTERESTS ENTITLED TO VOTE TO ACCEPT OR REJECT THE PLAN.

## ARTICLE I.
## DEFINED TERMS, RULES OF INTERPRETATION,
## COMPUTATION OF TIME, GOVERNING LAW, AND OTHER REFERENCES

A.    *Defined Terms*

1.    "*Ad Hoc Group Professionals*" means, collectively, Gibson Dunn, FTI, one local counsel retained in connection with the Chapter 11 Cases in any relevant jurisdictions, as applicable, to represent certain Consenting Lenders, and any other advisors retained by the Consenting Lenders with the consent of the Company (not to be unreasonably withheld).

2.    "*Administrative Claim*" means a Claim for costs and expenses of administration of the Chapter 11 Cases pursuant to sections 503(b), 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses incurred on or after the Petition Date until and including the Effective Date of preserving the Estates and operating the Debtors' businesses; (b) Allowed Professional Fee Claims; and (c) all Allowed requests for compensation or expense reimbursement for making a substantial contribution in the Chapter 11 Cases pursuant to sections 503(b)(3), (4), and (5) of the Bankruptcy Code. For the avoidance of doubt, a Claim asserting priority pursuant to section 503(b)(9) of the Bankruptcy Code is included in the definition of Administrative Claim.

3.    "*Affiliate*" has the meaning set forth in section 101(2) of the Bankruptcy Code.

4.    "*Agent*" means any administrative agent, collateral agent, or similar Entity under the Priority First Lien Credit Agreement or the First Lien Credit Agreement, including any successors thereto.

5.    "*Allowed*" means, with respect to any Claim or Interest: (a) a Claim or Interest as to which no objection has been filed and that is evidenced by a proof of claim or interest, as applicable, timely filed by the applicable bar date, if any, or that is not required to be evidenced by a filed proof of claim or interest, as applicable, under the Plan, the Bankruptcy Code, or a Final Order; (b) a Claim or Interest that is scheduled by the Company as neither disputed, contingent, nor unliquidated, and as for which no proof of claim or interest, as applicable, has been timely filed; or (c) a Claim or Interest that is Allowed (i) pursuant to any Final Order of the Bankruptcy Court or the Plan, (ii) in any stipulation that is approved by the Bankruptcy Court, or (iii) pursuant to any contract, instrument, indenture, or other agreement entered into or assumed in connection herewith. Except as otherwise specified in the Plan or any Final Order of the Bankruptcy Court, the amount of an Allowed Claim shall not include interest or other charges on such Claim from and after the Petition Date. No Claim of any Entity subject to section 502(d) of the Bankruptcy Code shall be deemed Allowed unless and until such Entity pays in full the amount that it owes such Debtor or Reorganized Debtor, as applicable.

6.      "*Alternative Transaction*" means a restructuring under this Plan consented to by the Required Consenting Lenders and the Required DIP Lenders in accordance with Article IV.Q of this Plan providing for the sale of all, or substantially all, of the Debtors' assets.

7.      "*Asset Purchase Agreement*" means one or more asset purchase agreements pursuant to which the Alternative Transaction is consummated, which shall be in form and substance acceptable to the Required Consenting Lenders and the Required DIP Lenders.

8.      "*Assumed Executory Contract and Unexpired Lease List*" means the list, as determined by the Debtors or the Reorganized Debtors, as applicable, with the consent of the Required Consenting Lenders, of Executory Contracts and Unexpired Leases (with proposed cure amounts) that will be assumed by the Reorganized Debtors, which list shall be included in the Plan Supplement.

9.      "*Assumed Executory Contracts and Unexpired Leases*" means those Executory Contracts and Unexpired Leases to be assumed by the applicable Reorganized Debtors with the consent of the Required Consenting Lenders, as set forth on the Assumed Executory Contract and Unexpired Lease List.

10.      "*Avoidance Actions*" means any and all avoidance, recovery, subordination, or other Claims, actions, or remedies that may be brought by or on behalf of the Debtors or their Estates or other authorized parties in interest under the Bankruptcy Code or applicable non-bankruptcy law, including actions or remedies under sections 502, 510, 542, 544, 545, 547 through and including 553, and 724(a) of the Bankruptcy Code or under similar or related state or federal statutes and common law, including fraudulent transfer laws.

11.      "*Bankruptcy Code*" means title 11 of the United States Code, 11 U.S.C. §§ 101–1532, as now in effect or hereafter amended, and the rules and regulations promulgated thereunder.

12.      "*Bankruptcy Court*" means the United States Bankruptcy Court for the Southern District of Texas or such other court having jurisdiction over the Chapter 11 Cases, including, to the extent of a withdrawal of the reference under 28 U.S.C. § 157, the United States District Court for the Southern District of Texas.

13.      "*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code, 28 U.S.C. § 2075, as applicable to the Chapter 11 Cases and the general, local, and chambers rules of the Bankruptcy Court, as now in effect or hereafter amended.

14.      "*Bidding Procedures Order*" means the order of the Bankruptcy Court, in form and substance acceptable to the Required Consenting Lenders and the Supermajority Required DIP Lenders, approving bidding procedures for the Alternative Transaction.

15.      "*Business Day*" means any day other than a Saturday, Sunday, or other day on which commercial banks are authorized to close under the Laws of, or are in fact closed in, the state of New York.

16.      "*Cash*" or "*$*" means the legal tender of the United States of America or the equivalent thereof, including bank deposits, checks, and cash equivalents, as applicable.

17.      "*Causes of Action*" means any claims, interests, damages, remedies, causes of action, demands, rights, actions, suits, obligations, liabilities, accounts, defenses, offsets, powers, privileges, licenses, Liens, indemnities, guaranties, and franchises of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, contingent or non-contingent, liquidated or unliquidated, secured or unsecured, assertable, directly or derivatively, matured or unmatured, suspected or unsuspected, in contract, tort, law, equity, or otherwise.  Causes of Action also include:  (a) all rights of setoff, counterclaim, or recoupment and claims under contracts or for breaches of duties imposed by law; (b) the right to object to or otherwise contest Claims or Interests; (c) claims pursuant to sections 362, 510, 542, 543, 544 through 550, or 553 of the Bankruptcy Code; (d) such claims and defenses as fraud, mistake, duress, and usury, and any other defenses set forth in section 558 of the Bankruptcy Code; and (e) any state or foreign law fraudulent transfer or similar claim.

2

18.     "*Chapter 11 Cases*" means the procedurally consolidated cases filed or to be filed (as applicable) for the Debtors in the Bankruptcy Court under chapter 11 of the Bankruptcy Code.

19.     "*Claim*" means any claim, as defined in section 101(5) of the Bankruptcy Code, against any of the Debtors, whether or not assessed or Allowed.

20.     "*Claims Register*" means the official register of Claims against the Debtors maintained by the Solicitation Agent.

21.     "*Class*" means a category of Holders of Claims or Interests under section 1122(a) of the Bankruptcy Code.

22.     "*Committee*" means any official committee of unsecured creditors appointed in the Chapter 11 Cases.

23.     "*Committee Professionals*" means any Professionals retained in connection with the Chapter 11 Cases to represent the Committee.

24.     "*Confirmation*" means entry of the Confirmation Order by the Bankruptcy Court on the docket of the Chapter 11 Cases.

25.     "*Confirmation Date*" means the date on which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Cases within the meaning of Bankruptcy Rules 5003 and 9021.

26.     "*Confirmation Hearing*" means the hearing held by the Bankruptcy Court pursuant to Bankruptcy Rule 3020(b)(2) and section 1128 of the Bankruptcy Code, including any adjournments thereof, at which the Bankruptcy Court will consider confirmation of the Plan.

27.     "*Confirmation Order*" means the order of the Bankruptcy Court confirming the Plan under section 1129 of the Bankruptcy Code, with such order being consistent with the Restructuring Support Agreement and otherwise in form and substance acceptable to the Required Consenting Lenders and the Required DIP Lenders.

28.     "*Consenting First Lien Lenders*" means the holders of, or investment advisors, sub-advisors, or managers of discretionary accounts that hold, First Lien Claims that are signatories to the Restructuring Support Agreement and remain parties thereto as of the Effective Date.

29.     "*Consenting Lenders*" means, collectively, the Consenting First Lien Lenders and the Consenting Priority First Lien Lenders.

30.     "*Consenting Lenders Fees and Expenses*" means all reasonable and documented fees and expenses of (a) Gibson Dunn, as counsel to certain of the Consenting Lenders, (b) FTI, as financial advisor to certain of the Consenting Lenders, and (c) any consultants or other professionals retained by the Consenting Lenders represented by Gibson Dunn in connection with the Debtors or the Restructuring Transactions with the consent of the Debtors (not to be unreasonably withheld), in each case, in accordance with the engagement letters of such consultant or professional signed by the Debtors, including, without limitation, any completion fees contemplated therein, and in each case, without further order of, or application to, the Bankruptcy Court by such consultant or professionals.

31.     "*Consenting Priority First Lien Lenders*" means the holders of, or investment advisors, sub-advisors, or managers of discretionary accounts that hold, Priority First Lien Claims that are signatories to the Restructuring Support Agreement and remain parties thereto as of the Effective Date.

32.     "*Consenting Sponsors*" means those Sponsors that are signatories to the Restructuring Support Agreement and remain parties thereto as of the Effective Date.

3

33.     "*Consenting Stakeholders*" means, collectively, the Consenting Lenders and the Consenting Sponsors.

34.     "*Consummation*" means the occurrence of the Effective Date.

35.     "*Control*," "*Controlled*," or "*Controlling*," means the possession, directly or indirectly, of the power to direct or cause the direction of the management or policies of a Person, whether through the ability to exercise voting power, by contract or otherwise.

36.     "*CPK*" means CPK Holdings, Inc., a company incorporated under the Laws of Delaware.

37.     "*CPK Parent*" means CPK Parent Inc., a company incorporated under the Laws of Delaware.

38.     "*Cure Claim*" means a Claim (unless waived or modified by the applicable counterparty) based upon a Debtor's defaults under an Executory Contract or an Unexpired Lease assumed by such Debtor under section 365 of the Bankruptcy Code, other than a default that is not required to be cured pursuant to section 365(b)(2) of the Bankruptcy Code.

39.     "*Deferred Compensation Plan*" shall mean the California Pizza Kitchen Executive Retirement Savings Plan, as amended, effective January 1, 2014.

40.     "*Definitive Documents*" means those documents governing the Restructuring Transactions or the Alternative Transaction, as applicable, including the following:  (a) the Restructuring Support Agreement; (b) the Restructuring Term Sheet; (c) all documents implementing and achieving the Restructuring Transactions, including any "first day" or "second day" pleadings and all orders sought pursuant thereto; (d) the Plan; (e) the Confirmation Order; (f) the Disclosure Statement; (g) the Solicitation Materials; (h) the Disclosure Statement Order; (i) the DIP Orders and the DIP Documents; (j) the Exit Facilities Documents; (k) all documents in connection with the Alternative Transaction, as applicable; (l) the Governance Documents; (m) the Plan Supplement; (n) such other definitive documentation relating to a recapitalization or restructuring of the Debtors as is necessary or desirable to consummate the Restructuring Transactions or the Alternative Transaction, as applicable; and (o) any other material exhibits, schedules, amendments, modifications, supplements, *appendices or other documents and/or agreements relating to any of the foregoing.*

41.     "*DIP Agent*" means Jefferies Finance LLC in its capacity as administrative agent and collateral agent under the DIP Facility.

42.     "*DIP Documents*" means any debtor-in-possession financing credit agreement and any other documentation necessary to effectuate the incurrence of the DIP Facility, which shall in each case be consistent with the Restructuring Term Sheet and in form and substance acceptable to the Required DIP Lenders.

43.     "*DIP Facility*" means a new money senior secured credit facility in form and substance acceptable to the Required DIP Lenders.

44.     "*DIP Facility Claim*" means any Claim on account of the Obligations under the DIP Facility.

45.     "*DIP Lenders*" has the meaning assigned to such term in the Restructuring Term Sheet.

46.     "*DIP Orders*" means, collectively, the Interim DIP Order and the Final DIP Order, which shall each be in form and substance reasonably acceptable to the Required Consenting Lenders and the Required DIP Lenders.

47.     "*Disclosure Statement*" means the *Disclosure Statement for the Joint Chapter 11 Plan of Reorganization of California Pizza Kitchen, Inc. and Its Debtor Affiliates*, as may be amended, supplemented or modified from time to time in accordance with the Restructuring Support Agreement, and all exhibits, schedules, supplements, modifications, and amendments thereto, and references therein, and all related solicitation materials, that relate to the Plan, that is prepared and distributed in accordance with the Bankruptcy Code, the Bankruptcy Rules, and

any other applicable Law, which shall be consistent with the Restructuring Support Agreement and otherwise in form and substance acceptable to the Debtors and the Required Consenting Lenders.

48.      "*Disclosure Statement Order*" means the order of the Bankruptcy Court approving the Disclosure Statement pursuant to Section 1125 of the Bankruptcy Code, the Solicitation Materials and modification of the automatic stay to permit the Consenting Stakeholders to provide any notices, including notices of termination, with respect to this Agreement in accordance with the terms hereof or thereof, which Disclosure Statement Order will be in accordance with the Restructuring Term Sheet and the Definitive Documents and otherwise in form and substance acceptable to the Required Consenting Lenders and the Required DIP Lenders.

49.      "*Disputed*" means, as to a Claim or an Interest, a Claim or an Interest:  (a) that is not Allowed; (b) that is not disallowed under the Plan, the Bankruptcy Code, or a Final Order, as applicable; and (c) with respect to which a party in interest has filed a Proof of Claim or otherwise made a written request to a Debtor for payment, without any further notice to or action, order, or approval of the Bankruptcy Court; *provided*, *however*, that in no event shall a Claim that is deemed Allowed pursuant to this Plan be a Disputed Claim.

50.      "*Distribution Agent*" means the Debtors, the Reorganized Debtors, or the Plan Administrator, as applicable, or any Entity or Entities selected by the Debtors, the Reorganized Debtors, or the Plan Administrator, with the consent of the Required Consenting Lenders and the Required DIP Lenders to make or to facilitate distributions in accordance with the Plan.

51.      "*Distribution Proceeds*" means all Cash of the Debtors on or after the Effective Date after giving effect to any payments or distributions required to be made on the Effective Date pursuant to the Plan and the funding of the Distribution Reserve Accounts.

52.      "*Distribution Record Date*" means the date for determining which Holders of Allowed Claims and Interests are eligible to receive distributions pursuant to the Plan, which date shall be the Effective Date.

53.      "*Distribution Reserve Accounts*" means the accounts established pursuant to Article VII.E of the Plan.

54.      "*Effective Date*" means the date that is the first Business Day after the Confirmation Date on which all conditions precedent to the occurrence of the Effective Date set forth in Article X.A of the Plan have been satisfied or waived in accordance with Article X.B of the Plan.

55.      "*Entity*" has the meaning set forth in section 101(15) of the Bankruptcy Code.

56.      "*Equity Interests*" means, collectively, the shares (or any class thereof), common stock, preferred stock, limited liability company interests, and any other equity, ownership, or profits interests of any Debtor, and options, warrants, rights, or other securities or agreements to acquire or subscribe for, or which are convertible into the shares (or any class thereof) of, common stock, preferred stock, limited liability company interests, or other equity, ownership, or profits interests of any Debtor (in each case whether or not arising under or in connection with any employment agreement).

57.      "*Estate*" means the estate of any Debtor created under sections 301 and 541 of the Bankruptcy Code upon the commencement of the applicable Debtor's Chapter 11 Case.

58.      "*Exchange Act*" means the Securities Exchange Act of 1934, as amended.

59.      "*Exculpated Party*" means, collectively, and in each case in its capacity as such:  (a) the Debtors and the Reorganized Debtors,  (b) the Consenting Lenders, (c) the DIP Lenders, (d) the First Lien Agents, (e) the DIP Agents, and (f) with respect to each of the foregoing entities, each such Entity's current and former predecessors, successors, Affiliates (regardless of whether such interests are held directly or indirectly), subsidiaries, direct and indirect equity holders, and advisors.

60.     "*Executory Contract*" means a contract or lease to which one or more of the Debtors is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

61.     "*Existing Equity Interests*" means all existing securities issued by the Debtors or their parent entities.

62.     "*Exit Facilities*" means, collectively, the New First Lien Term Loan Exit Facility, the New Second Lien Term Loan Exit Facility, and the New First Lien Exit L/C Facility.

63.     "*Exit Facilities Credit Agreements*" means, collectively, those certain credit agreements that will govern the Exit Facilities (as each may be amended, supplemented, or otherwise modified from time to time), in each case which shall be consistent with the Restructuring Term Sheet and in form and substance acceptable to the Required Consenting Lenders and the Required DIP Lenders.

64.     "*Exit Facilities Documents*" means, collectively, the Exit Facilities Credit Agreements, and any and all other agreements, documents, and instruments delivered or to be entered into in connection therewith, including any amendments to existing loan or other finance documentation, any guarantee agreements, pledge and collateral agreements, intercreditor agreements, and other security documents, in each case if any, which shall be consistent with the Restructuring Term Sheet and in form and substance acceptable to the Required Consenting Lenders and the Required DIP Lenders.

65.     "*Final Decree*" means the decree contemplated under Bankruptcy Rule 3022.

66.     "*Final DIP Order*" means the order of the Bankruptcy Court approving the DIP Facility on a final basis, which shall be consistent with the Restructuring Term Sheet and in form and substance acceptable to the Required Consenting Lenders and the Required DIP Lenders.

67.     "*Final Order*" means, as applicable, an order or judgment of the Bankruptcy Court or other court of competent jurisdiction with respect to the relevant subject matter that has not been reversed, modified, or amended, is not subject to any pending stay and as to which the time to reasonable appeal, move for reargument, reconsideration, or rehearing, or seek certiorari has expired and no appeal, motion for reargument, reconsideration, or rehearing or petition for certiorari has been timely taken or filed, or as to which any appeal that has been taken, motion for reargument, reconsideration, or rehearing that has been granted or any petition for certiorari that has been or may be filed has been resolved by the highest court to which the order or judgment could be appealed or from which certiorari could be sought or the new trial, reargument, reconsideration, or rehearing shall have been denied, resulted in no modification of such order, or has otherwise been dismissed with prejudice; *provided* that the possibility that a motion under rule 60 of the Federal Rules of Civil Procedure or any comparable Bankruptcy Rule may be filed relating to such order or judgment shall not cause such order or judgment to not be a Final Order.

68.     "*First Lien Agent*" means Jefferies Finance LLC, acting through such of its affiliates or branches as it may designate, in its capacity as (a) administrative agent and collateral agent under the First Lien Credit Agreement, or any successor administrative agent or collateral agent as permitted by the terms set forth in the First Lien Credit Agreement, and (b) administrative agent or collateral agent under the Priority First Lien Credit Agreement, or any successor administrative agent or collateral agent as permitted by the terms set forth in the Priority First Lien Credit Agreement.

69.     "*First Lien Claims*" means, collectively, the First Lien Credit Agreement Claims and the First Lien Credit Agreement L/C Claims.

70.     "*First Lien Credit Agreement*" means that certain First Lien Credit and Guarantee Agreement, as amended, supplemented, or otherwise modified from time to time, dated as of August 23, 2016, by and among CPK Holdings Inc., as holdings, the subsidiary guarantors from time to time party thereto, the First Lien Lenders, California Pizza Kitchen, Inc., as borrower, and the First Lien Agent.

71.     "*First Lien Credit Agreement Claim*" means any Claim on account of the Obligations under the First Lien Credit Agreement, including but not limited to any fees provided thereunder.

72. "*First Lien Credit Agreement L/C Claim*" means any Claim on account of the Obligations under the First Lien Credit Agreement on account of outstanding letters of credit.

73. "*First Lien Credit Agreement L/C Secured Claim*" means any First Lien Credit Agreement L/C Claim that is a Secured Claim.

74. "*First Lien Credit Agreement Lenders*" means, collectively, the banks, financial institutions, and other lenders party to the First Lien Credit Agreement from time to time, each solely in their capacity as such.

75. "*First Lien Credit Agreement Loans*" means the loans outstanding under the First Lien Credit Agreement.

76. "*First Lien Credit Agreement Secured Claim*" means any First Lien Credit Agreement Claim that is a Secured Claim.

77. "*First Lien Deficiency Claim*" means any First Lien Claim that is not a First Lien Secured Claim.

78. "*First Lien Lenders*" means, collectively, the First Lien Credit Agreement Lenders and the Priority First Lien Lenders.

79. "*First Lien Loans*" means, collectively, the First Lien Credit Agreement Loans and the Priority First Lien Loans.

80. "*First Lien/Second Lien Intercreditor Agreement*" means that certain agreement between the First Lien Agent and Second Lien Agent, among others, dated as of August 23, 2016 (as amended, restated, amended and restated, supplemented or otherwise modified from time to time in accordance with its terms).

81. "*First Lien Secured Claims*" means, collectively, the First Lien Credit Agreement Secured Claims and the First Lien Credit Agreement L/C Secured Claims.

82. "*FTI*" means FTI Consulting, Inc., restructuring and financial advisor to certain of the Consenting Lenders.

83. "*General Unsecured Claim*" means any Claim, including the First Lien Deficiency Claims, other than (a) a Claim that is paid in full prior to the Effective Date pursuant to an order of the Bankruptcy Court, (b) an Administrative Claim (including, for the avoidance of doubt, a Professional Fee Claim), (c) a DIP Facility Claim, (d) a Priority Tax Claim, (e) an Other Secured Claim, (f) an Other Priority Claim, (g) a First Lien Secured Claim, (h) a Second Lien Claim, or (i) an Intercompany Claim.

84. "*Gibson Dunn*" means Gibson, Dunn & Crutcher LLP, counsel to certain of the Consenting Lenders.

85. "*Governance Documents*" means the organizational and governance documents for Reorganized CPK and its subsidiaries and affiliates, including without limitation, certificates of incorporation, certificates of formation or certificates of limited partnership (or equivalent organizational documents), bylaws, limited liability company agreements (or equivalent governing documents), as applicable, which shall in each case be consistent with the Restructuring Support Agreement and otherwise in form and substance acceptable to the Debtors and the Required Consenting Lenders.

86. "*Governmental Unit*" has the meaning set forth in section 101(27) of the Bankruptcy Code.

87. "*Holder*" means an Entity holding a Claim or an Interest, or, if applicable, an Entity receiving or retaining Interests in Reorganized CPK or the New Common Stock, as applicable.

88. "*Impaired*" means, with respect to any Class of Claims or Interests, a Claim or an Interest that is impaired within the meaning of section 1124 of the Bankruptcy Code.

89.     "*Intercompany Claim*" means any Claim held by a Debtor against another Debtor or an Affiliate of a Debtor.

90.     "*Intercompany Interest*" means an Interest held by a Debtor or an Affiliate of a Debtor.

91.     "*Intercreditor Agreements*" means the Priority/First Lien Intercreditor Agreement and the First Lien/Second Lien Intercreditor Agreement.

92.     "*Interest*" means any common stock, limited liability company interest, equity security (as defined in section 101(16) of the Bankruptcy Code), equity, ownership, profit interests, unit, or share in a Debtor, including all issued, unissued, authorized, or outstanding shares of capital stock of the Debtors and any other rights, options, warrants, stock appreciation rights, phantom stock rights, restricted stock units, redemption rights, repurchase rights, convertible, exercisable or exchangeable securities or other agreements, arrangements or commitments of any character relating to, or whose value is related to, any such interest or other ownership interest in any Debtor.

93.     "*Interim DIP Order*" means the order of the Bankruptcy Court approving the DIP Facility on an interim basis, which shall be consistent with the Restructuring Term Sheet and in form and substance acceptable to the Required Consenting Lenders and Required DIP Lenders.

94.     "*Judicial Code*" means title 28 of the United States Code, 28 U.S.C. §§ 1–4001, as now in effect or hereafter amended, and the rules and regulations promulgated thereunder.

95.     "*Law*" means any federal, state, local, or foreign law (including common law), statute, code, ordinance, rule, regulation, order, ruling, or judgment, in each case, that is validly adopted, promulgated, issued, or entered by a governmental authority of competent jurisdiction (including the Bankruptcy Court).

96.     "*Lien*" has the meaning set forth in section 101(37) of the Bankruptcy Code.

97.     "*Management Incentive Plan*" means that certain management incentive plan of Reorganized CPK, which may provide for equity-based incentive awards, issued at the applicable divisions or operating company levels, of up to 10%, which shall include consideration to be agreed.

98.     "*New Common Stock*" means the common stock, limited liability company membership units, or functional equivalent thereof of Reorganized CPK Parent to be issued on the Effective Date.

99.     "*New First Lien Exit L/C Facility*" has the meaning assigned to such term in the Restructuring Term Sheet.

100.    "*New First Lien Term Loan Exit Facility*" has the meaning assigned to such term in the Restructuring Term Sheet.

101.    "*New Money DIP Fee*" has the meaning assigned to such term in the Restructuring Term Sheet.

102.    "*New Organizational Documents*" means the form of certificate or articles of incorporation, bylaws, or such other applicable formation documents (if any) of Reorganized CPK, each of which shall be included in the Plan Supplement and materially consistent with the Restructuring Support Agreement.

103.    "*New Second Lien Term Loan Exit Facility*" has the meaning assigned to such term in the Restructuring Term Sheet.

104.    "*New Shareholders Agreement*" means that certain shareholders agreement that will govern certain matters related to the governance of Reorganized CPK and the New Common Stock, which shall be in form and substance acceptable to the Required Consenting Lenders and the Required DIP Lenders and, prior to the Effective Date, otherwise subject to the consent rights set forth in the Restructuring Support Agreement.

105. "*Obligations*" means those obligations outstanding under either (a) the DIP Facility, (b) the Priority First Lien Credit Agreement, (c) the First Lien Credit Agreement, or (d) the Second Lien Credit Agreement.

106. "*Other Priority Claim*" means any Claim other than an Administrative Claim, a DIP Facility Claim, or a Priority Tax Claim entitled to priority in right of payment under section 507(a) of the Bankruptcy Code.

107. "*Other Secured Claim*" means any Secured Claim against the Debtors, including any Secured Tax Claim (to the extent applicable), other than a First Lien Claim, or Second Lien Claim.

108. "*Person*" has the meaning set forth in section 101(41) of the Bankruptcy Code.

109. "*Petition Date*" means the date on which each of the Debtors commence the Chapter 11 Cases.

110. "*Plan*" means this joint plan of reorganization filed by the Debtors under chapter 11 of the Bankruptcy Code in accordance with the terms of the Restructuring Support Agreement.

111. "*Plan Administrator*" means the person selected by the Debtors, and, in the event that all First Lien Secured Claims are not paid or otherwise satisfied in full, reasonably acceptable to the Required Consenting Lenders and the Required DIP Lenders, to administer the Plan Administrator Assets. All costs, liabilities, and expenses reasonably incurred by the Plan Administrator, and any personnel employed by the Plan Administrator in the performance of the Plan Administrator's duties, shall be paid from the Plan Administrator Assets.

112. "*Plan Administrator Assets*" means, on the Effective Date, all assets of the Estates to be administered by the Plan Administrator.

113. "*Plan Effective Date*" means the occurrence of the Effective Date of the Plan according to its terms.

114. "*Plan Supplement*" means the compilation of documents and forms of documents, agreements, schedules, and exhibits to the Plan to be filed by the Debtors as may be amended, supplemented, altered, or modified from time to time consistent with the terms set forth in the Restructuring Term Sheet and acceptable in form and substance to the Required Consenting Lenders and Required DIP Lenders, and which includes: (a) the New Organizational Documents; (b) the Exit Facilities Documents; (c) the New Shareholders Agreement; (d) the Management Incentive Plan; (e) the Restructuring Steps Memorandum; (f) the identity of the members of the Reorganized CPK Board and the officers of Reorganized CPK; (g) the Rejected Executory Contract and Unexpired Lease List; (h) the Assumed Executory Contract and Unexpired Lease List; (i) the schedule of retained Causes of Action; and (j) any other necessary documentation related to the Restructuring Transactions, each of which shall be in form and substance consistent with the Restructuring Support Agreement. The Debtors shall have the right to amend the documents contained in, and exhibits to, the Plan Supplement through the Effective Date, and any such amendment(s) shall be in form and substance acceptable to the Required Consenting Lenders and Required DIP Lenders. If the Alternative Transaction occurs, the Plan Supplement shall include: (a) the Assumed Executory Contract and Unexpired Lease List; (b) a schedule of retained Causes of Action; (c) the Asset Purchase Agreement; (d) the identity and compensation of the Plan Administrator, if any; and (e) any other necessary documentation related to the Alternative Transaction and the Wind Down as contemplated under the Plan, subject to the Debtors' right to amend such documents related to the Alternative Transaction and the Wind Down contained in, and exhibits to, the Plan Supplement through the Effective Date and, in the event all First Lien Secured Claims are not paid or otherwise satisfied in full, with any such amendment(s) in form and substance acceptable to the Required Consenting Lenders and Required DIP Lenders.

115. "*Priority/First Lien Intercreditor Agreement*" means that certain agreement between the Priority First Lien Agent and the First Lien Agent, among others, dated as of April 27, 2020 (as amended, restated, amended and restated, supplemented or otherwise modified from time to time in accordance with its terms).

116. "*Priority First Lien Agent*" means Jefferies Finance LLC, acting through such of its affiliates or branches as it may designate, in its capacity as administrative agent and collateral agent under the Priority First Lien

Credit Agreement, or any successor administrative agent or collateral agent as permitted by the terms set forth in the Priority First Lien Credit Agreement.

117.    "*Priority First Lien Claim*" means any Claim on account of the Obligations under the Priority First Lien Credit Agreement, including but not limited to any fees provided thereunder.

118.    "*Priority First Lien Credit Agreement*" means that certain Priority First Lien Credit and Guarantee Agreement, as amended, supplemented, or otherwise modified from time to time, dated as of April 27, 2020, by and among CPK Holdings Inc., as holdings, the subsidiary guarantors from time to time party thereto, the First Lien Lenders from time to time parties hereto, California Pizza Kitchen, Inc., as borrower, and the Priority First Lien Agent.

119.    "*Priority First Lien Lenders*" has the meaning assigned to such term in the Restructuring Term Sheet.

120.    "*Priority First Lien Loans*" means loans outstanding under the Priority First Lien Credit Agreement.

121.    "*Priority Tax Claim*" means any Claim of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

122.    "*Pro Rata*" means the proportion that an Allowed Claim or an Allowed Interest in a particular Class bears to the aggregate amount of Allowed Claims or Allowed Interests in that Class.

123.    "*Professional*" means an Entity retained in the Chapter 11 Cases pursuant to a Final Order in accordance with sections 327, 363, and 1103 of the Bankruptcy Code and to be compensated for services rendered prior to or on the Effective Date pursuant to sections 327, 328, 329, 330, 331, or 363 of the Bankruptcy Code. For the avoidance of doubt, the term "Professional" does not include the Ad Hoc Group Professionals.

124.    "*Professional Fee Claims*" means all Claims for accrued, contingent, and/or unpaid fees and expenses (including transaction and success fees) incurred by a Professional in the Chapter 11 Cases on or after the Petition Date and through and including the Confirmation Date that the Bankruptcy Court has not denied by Final Order.  To the extent that the Bankruptcy Court or any higher court of competent jurisdiction denies or reduces by a Final Order any amount of a Professional's requested fees or expenses, then those reduced or denied amounts shall no longer constitute Professional Fee Claims.

125.    "*Professional Fee Escrow Account*" means an interest-bearing account funded by the Debtors with Cash on or before the Effective Date in an amount equal to the Professional Fee Escrow Amount.

126.    "*Professional Fee Escrow Amount*" means the aggregate amount of Professional Fee Claims and other unpaid fees and expenses Professionals estimate they have incurred or will incur in rendering services to the Debtors prior to and as of the Confirmation Date, which estimates Professionals shall deliver to the Debtors and Ad Hoc Group Professionals as set forth in Article II.B of the Plan.

127.    "*Proof of Claim*" means a proof of Claim filed against any of the Debtors in the Chapter 11 Cases.

128.    "*Purchaser*" means the purchaser under the Asset Purchase Agreement, together with its successors and permitted assigns (including any and all of its wholly-owned Affiliates to which it assigns any of its rights or obligations under the Asset Purchase Agreement).

129.    "*Reinstate*," "*Reinstated*," or "*Reinstatement*" means with respect to Claims and Interests, that the Claim or Interest shall be rendered Unimpaired in accordance with section 1124 of the Bankruptcy Code.

130.    "*Rejected Executory Contract and Unexpired Lease List*" means the list, as determined by the Debtors or the Reorganized Debtors, as applicable, of Executory Contracts and Unexpired Leases that will be rejected by the Reorganized Debtors pursuant to the Plan, which list shall be included in the Plan Supplement.

131. "*Released Party*" means, collectively, and in each case in its capacity as such: (a) the Debtors and the Reorganized Debtors; (b) the Consenting Lenders; (c) the DIP Lenders, (d) the DIP Agents, (e) the First Lien Agents; (f) the Consenting Sponsors; (g) with respect to each of the foregoing entities, each such Entity's current and former predecessors, successors, Affiliates (regardless of whether such interests are held directly or indirectly), subsidiaries, direct and indirect equity holders, and funds; and (h) with respect to each of the foregoing Entities in clauses (a) through (g), each of their respective current and former directors, officers, members, employees, partners, managers, independent contractors, agents, representatives, principals, professionals, consultants, financial advisors, attorneys, accountants, investment bankers, and other professional advisors (with respect to clause (g), each solely in their capacity as such); *provided, however,* that any Holder of a Claim or Interest that objects to the releases in the Plan or affirmatively opts out of the releases provided by the Plan shall not be a "Released Party."

132. "*Releasing Parties*" means, collectively, and in each case in its capacity as such: (a) the Debtors and the Reorganized Debtors; (b) the Consenting Lenders; (c) the DIP Lenders, (d) the DIP Agents, (e) the First Lien Agents, (f) the Consenting Sponsors; (g) with respect to each of the foregoing entities in clauses (a) through (f), each such Entity's current and former predecessors, successors, Affiliates (regardless of whether such interests are held directly or indirectly), subsidiaries, direct and indirect equity holders, and funds; (h) with respect to each of the foregoing Entities in clauses (a) through (g), each of their respective current and former directors, officers, members, employees, partners, managers, independent contractors, agents, representatives, principals, professionals, consultants, financial advisors, attorneys, accountants, investment bankers, and other professional advisors (with respect to clause (f), each solely in their capacity as such); and (i) all Holders of Claims and Interests not described in the foregoing clauses (a) through (i); *provided, however,* that any Holder of a Claim or Interest that (1) affirmatively opts out of the releases provided by the Plan or (2) objects to the releases in the Plan, shall not be a "Releasing Party" for purposes of the Plan.

133. "*Reorganized CPK*" means CPK Holdings, Inc., or any successor or assign thereto, by merger, consolidation, reorganization, or otherwise, in the form of a corporation, limited liability company, partnership, or other form, as the case may be, on and after the Effective Date.

134. "*Reorganized CPK Board*" means the board of directors (or other applicable governing body) of Reorganized CPK.

135. "*Reorganized CPK Parent*" means CPK Parent Inc., or any successor or assign thereto, by merger, consolidation, reorganization, or otherwise, in the form of a corporation, limited liability company, partnership, or other form, as the case may be, on and after the Effective Date.

136. "*Reorganized Debtor*" means a Debtor, or any successor or assign thereto, by merger, consolidation, reorganization, or otherwise, in the form of a corporation, limited liability company, partnership, or other form, as the case may be, on and after the Effective Date, including Reorganized CPK.

137. "*Required Consenting First Lien Lenders*" means, as of the relevant date, Consenting First Lien Lenders holding at least 50.01% of the aggregate outstanding principal amount of First Lien Loans that are held by Consenting First Lien Lenders.

138. "*Required Consenting Lenders*" means, as of the relevant date, each of (a) the Required Consenting Priority First Lien Lenders and (b) the Required Consenting First Lien Lenders.

139. "*Required Consenting Priority First Lien Lenders*" means, as of the relevant date, Consenting Priority First Lien Lenders holding at least 50.01% of the aggregate outstanding principal amount of Priority First Lien Loans that are held by Consenting Priority First Lien Lenders.

140. "*Required Consenting Sponsors*" means, as of the relevant date, Consenting Sponsors holding at least 50.01% of the aggregate Equity Interests.

141. "*Required Consenting Stakeholders*" means the Required Consenting Lenders and the Required Consenting Sponsors.

11

142.     "*Required DIP Lenders*" has the meaning assigned to such term in the Restructuring Term Sheet.

143.     "*Restructuring Steps Memorandum*" means the summary of transaction steps to complete the restructuring contemplated by the Plan, which shall be included in the Plan Supplement.

144.     "*Restructuring Support Agreement*" means that certain Restructuring Support Agreement, dated as of July 29, 2020, by and among the Debtors, the Consenting Sponsors, and the Consenting Lenders, including all exhibits and attachments thereto, and as amended, restated, and supplemented from time to time in accordance with its terms.

145.     "*Restructuring Term Sheet*" means the term sheet attached as Exhibit B to the Restructuring Support Agreement (as may be amended, supplemented, or otherwise modified from time to time in accordance with the terms of the Restructuring Support Agreement).

146.     "*Restructuring Transactions*" means the equitization transactions contemplated by and pursuant to this Plan, as described in Article IV.B of the Plan.  The Restructuring Transactions do not include the Alternative Transaction, as described in Article IV.Q of the Plan.

147.     "*Rules*" means Rule 501(a)(1), (2), (3), and (7) of the Securities Act.

148.     "*SEC*" means the Securities and Exchange Commission.

149.     "*Second Lien Agent*" means Wilmington Trust, National Association, acting through such of its affiliates or branches as it may designate, in its capacity as administrative agent and collateral agent under the Second Lien Credit Agreement, or any successor administrative agent or collateral agent as permitted by the terms set forth in the Second Lien Credit Agreement.

150.     "*Second Lien Claim*" means any Claim on account of the Obligations under the Second Lien Credit Agreement.

151.     "*Second Lien Credit Agreement*" means that certain Second Lien Credit and Guarantee Agreement, as amended, supplemented, or otherwise modified from time to time, dated as of August 23, 2016, by and among CPK Holdings Inc., as holdings, the subsidiary guarantors from time to time party thereto, the Second Lien Lenders, California Pizza Kitchen, Inc., as borrower, and the Second Lien Agent.

152.     "*Secured*" means, when referring to a Claim:  (a) secured by a valid, perfected, and enforceable Lien on collateral in which the applicable Estate has an interest to the extent of the value of such collateral, as determined in accordance with section 506(a) of the Bankruptcy Code; (b) subject to a valid right of setoff pursuant to section 553 of the Bankruptcy Code; or (c) Allowed pursuant to the Plan as a Secured Claim.

153.     "*Secured Tax Claim*" means any Secured Claim that, absent its secured status, would be entitled to priority in right of payment under section 507(a)(8) of the Bankruptcy Code (determined irrespective of time limitations), including any related Secured Claim for penalties.

154.     "*Securities Act*" means the Securities Act of 1933, 15 U.S.C. §§ 77a–77aa, or any similar federal, state, or local law, as now in effect or hereafter amended, and the rules and regulations promulgated thereunder.

155.     "*Security*" has the meaning set forth in section 2(a)(1) of the Securities Act.

156.     "*Solicitation Agent*" means Prime Clerk LLC, the notice, claims, and solicitation agent retained by the Debtors for the Chapter 11 Cases.

157.     "*Solicitation Materials*" means all solicitation materials in respect of the Plan together with the Disclosure Statement, which Solicitation Materials shall be in accordance with the Restructuring Support Agreement

and the Definitive Documents and in form and substance acceptable to the Required Consenting Lenders and the Required DIP Lenders.

158.    "*Sponsor*" means the Holders of Existing Equity Interests.

159.    "*Supermajority Required DIP Lenders*" means DIP Lenders holding at least 66.67% of the aggregate outstanding principal amount of the DIP Facility that have signed the Restructuring Support Agreement.

160.    "*Transfer*" means to sell, resell, reallocate, use, pledge, assign, transfer, hypothecate, participate, donate or otherwise encumber or dispose of, directly or indirectly (including through derivatives, options, swaps, pledges, forward sales or other transactions).

161.    "*U.S. Trustee*" means the Office of the United States Trustee for the Southern District of Texas.

162.    "*Unexpired Lease*" means a lease of nonresidential real property to which one or more of the Debtors is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

163.    "*Unimpaired*" means a Class of Claims or Interests that is unimpaired within the meaning of section 1124 of the Bankruptcy Code.

164.    "*Wind Down*" means the wind down of the Debtors' Estates following the Plan Effective Date as contemplated under the Alternative Transaction as set forth in Article VII.B hereof.

B.      *Rules of Interpretation*

For purposes of the Plan, except as otherwise provided in this Plan:  (a) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (b) unless otherwise specified, any reference in the Plan to an existing document, schedule, or exhibit, shall mean such document, schedule, or exhibit, as it may have been or may be amended, modified, or supplemented; (c) unless otherwise specified, all references in the Plan to "Articles" and "Sections" are references to Articles and Sections, respectively, hereof or hereto; (d) the words "herein," "hereof," and "hereto" refer to the Plan in its entirety rather than to any particular portion of the Plan; (e) any effectuating provisions may be interpreted by the Debtors (subject to the terms of the Restructuring Support Agreement) or the Reorganized Debtors in such a manner that is consistent with the overall purpose and intent of the Plan all without further notice to or action, order, or approval of the Bankruptcy Court or any other Entity; (f) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (g) unless otherwise specified in the Plan, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (h) any term used in capitalized form in the Plan that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to such term in the Bankruptcy Code or the Bankruptcy Rules, as applicable; (i) references to docket numbers of documents filed in the Chapter 11 Cases are references to the docket numbers under the Bankruptcy Court's CM/ECF system; (j) references to "Proofs of Claim," "Holders of Claims," "Disputed Claims," and the like shall include "Proofs of Interest," "Holders of Interests," "Disputed Interests," and the like as applicable; (k) references to "shareholders," "directors," and/or "officers" shall also include "members" and/or "managers," as applicable, as such terms are defined under the applicable state limited liability company laws; (l) the terms "include" and "including," and variations thereof, shall not be deemed to be terms of limitation, and shall be deemed to be followed by the words "without limitation"; and (m) except as otherwise provided in the Plan, any reference to the Effective Date shall mean the Effective Date or as soon as reasonably practicable thereafter.

C.      *Computation of Time*

Unless otherwise specifically stated in the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed in the Plan.  If the date on which a transaction may occur pursuant to the Plan shall occur on a day that is not a Business Day, then such transaction shall instead occur on the next succeeding Business Day.

D.     *Governing Law*

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of New York, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of the Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control); *provided*, *however*, that corporate governance matters relating to the Debtors or the Reorganized Debtors, as applicable, shall be governed by the laws of the state of incorporation or formation of the relevant Debtor or Reorganized Debtor, as applicable.

E.     *Reference to Monetary Figures*

All references in the Plan to monetary figures refer to currency of the United States of America, unless otherwise expressly provided herein.

F.     *Reference to the Debtors or the Reorganized Debtors*

Except as otherwise specifically provided in the Plan to the contrary, references in the Plan to the Debtors or to the Reorganized Debtors mean the Debtors and the Reorganized Debtors, as applicable, to the extent the context requires.

G.     *Controlling Document*

In the event of an inconsistency between the Plan, the Restructuring Support Agreement, and the Disclosure Statement, the terms of the Plan shall control in all respects.  In the event of an inconsistency between the Plan and any document included in the Plan Supplement, the terms of the relevant provision in the Plan Supplement shall control.  In the event of any inconsistency between the Plan and the Confirmation Order, the Confirmation Order shall control.

H.     *Consent Rights*

Notwithstanding anything herein to the contrary, any and all consent rights of the parties to the Restructuring Support Agreement set forth in the Restructuring Support Agreement with respect to the form and substance of this Plan, all exhibits to the Plan, the Plan Supplements, and the Definitive Documents, including any amendments, restatements, supplements, or other modifications to such agreements and documents, and any consents, waivers, or other deviations under or from any such documents, shall be incorporated herein by this reference (including to the applicable definitions in Article I.A hereof) and be fully enforceable as if stated in full herein.

## ARTICLE II.
## ADMINISTRATIVE CLAIMS, DIP FACILITY CLAIMS, AND PRIORITY CLAIMS

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, DIP Facility Claims, Professional Fee Claims, and Priority Tax Claims have not been classified and thus are excluded from the Classes of Claims set forth in Article III of the Plan.

A.     *Administrative Claims*

Unless otherwise agreed to by the Holders of an Allowed Administrative Claim and the Debtors or the Reorganized Debtors, as applicable, each Holder of an Allowed Administrative Claim (other than Holders of Professional Fee Claims and Claims for fees and expenses pursuant to section 1930 of chapter 123 of title 28 of the United States Code) shall, with the reasonable consent of the Required DIP Lenders and the Required Consenting Lenders, either receive, in full and final satisfaction of its Administrative Claim, an amount of Cash equal to the amount of such Allowed Administrative Claim, or otherwise receive treatment consistent with the provisions of section 1129(a)(9) of the Bankruptcy Code, in accordance with the following:  (a) if an Administrative Claim is

Allowed as of the Effective Date, on the Effective Date (or, if not then due, when such Allowed Administrative Claim is due or as soon as reasonably practicable thereafter); or (b) if such Administrative Claim is not Allowed as of the Effective Date, no later than the date on which an order Allowing such Administrative Claim becomes a Final Order, or as soon as reasonably practicable thereafter.

B.      *Professional Fee Claims*

        1.      Professional Fee Escrow Account

        On or prior to the Effective Date, the Debtors shall establish and fund the Professional Fee Escrow Account with Cash equal to the Professional Fee Escrow Amount. The Professional Fee Escrow Account shall be maintained in trust solely for the Professionals and for no other Entities until all Professional Fee Claims Allowed by the Bankruptcy Court have been irrevocably paid in full to the Professionals pursuant to one or more Final Orders of the Bankruptcy Court. No Liens, claims, or interests shall encumber the Professional Fee Escrow Account or Cash held in the Professional Fee Escrow Account in any way. Such funds shall not be considered property of the Estates, the Debtors, or the Reorganized Debtors.

        The amount of Professional Fee Claims owing to the Professionals shall be paid in Cash to such Professionals by the Debtors or the Reorganized Debtors, as applicable, from the funds held in the Professional Fee Escrow Account as soon as reasonably practicable after such Professional Fee Claims are Allowed by an order of the Bankruptcy Court; *provided* that the Debtors' and the Reorganized Debtors' obligations to pay Allowed Professional Fee Claims shall not be limited nor be deemed limited to funds held in the Professional Fee Escrow Account. When all Professional Fee Claims Allowed by the Bankruptcy Court have been irrevocably paid in full to the Professionals pursuant to one or more Final Orders of the Bankruptcy Court, any remaining funds held in the Professional Fee Escrow Account shall promptly be paid to the Reorganized Debtors without any further notice to or action, order, or approval of the Bankruptcy Court or any other Entity.

        2.      Final Fee Applications and Payment of Professional Fee Claims

        All final requests for payment of Professional Fee Claims for services rendered and reimbursement of expenses incurred prior to the Confirmation Date must be filed no later than forty-five (45) days after the Effective Date. The Bankruptcy Court shall determine the Allowed amounts of such Professional Fee Claims after notice and a hearing in accordance with the procedures established by the Bankruptcy Code, Bankruptcy Rules, and prior Bankruptcy Court orders. The Reorganized Debtors shall pay the amount of the Allowed Professional Fee Claims owing to the Professionals in Cash to such Professionals, including from funds held in the Professional Fee Escrow Account when such Professional Fee Claims are Allowed by entry of an order of the Bankruptcy Court.

        3.      Professional Fee Escrow Amount

        The Professionals shall provide a reasonable and good-faith estimate of their fees and expenses incurred in rendering services to the Debtors before and as of the Confirmation Date projected to be outstanding as of the Effective Date, and shall deliver such estimate to the Debtors, Ad Hoc Group Professionals, and Committee Professionals (if any) no later than five (5) Business Days before the anticipated Effective Date; *provided*, *however*, that such estimate shall not be considered an admission or limitation with respect to the fees and expenses of such Professional and such Professionals are not bound to any extent by the estimates. If a Professional does not provide an estimate, the Debtors may estimate a reasonable amount of unbilled fees and expenses of such Professional, taking into account any prior payments; *provided*, *however*, that such estimate shall not be binding or considered an admission with respect to the fees and expenses of such Professional. The total aggregate amount so estimated as of the Effective Date shall be utilized by the Debtors to determine the amount to be funded to the Professional Fee Escrow Account.

        4.      Post-Confirmation Date Fees and Expenses

        From and after the Confirmation Date, the Debtors or Reorganized Debtors, as applicable, shall, in the ordinary course of business and without any further notice to or action, order, or approval of the Bankruptcy Court, pay in Cash the reasonable and documented legal, professional, or other fees and expenses incurred by the Debtors or

the Reorganized Debtors, as applicable.  Upon the Confirmation Date, any requirement that Professionals comply with sections 327 through 331 and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Debtors and Reorganized Debtors, as applicable, may employ and pay any Professional in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court.

The Debtors and Reorganized Debtors, as applicable, shall pay, within ten (10) Business Days after submission of a detailed invoice to the Debtors or Reorganized Debtors, as applicable, such reasonable claims for compensation or reimbursement of expenses incurred by the retained Professionals of the Debtors or the Reorganized Debtors, as applicable.  If the Debtors or Reorganized Debtors, as applicable, dispute the reasonableness of any such invoice, the Debtors or Reorganized Debtors, as applicable, or the affected professional may submit such dispute to the Bankruptcy Court for a determination of the reasonableness of any such invoice, and the disputed portion of such invoice shall not be paid until the dispute is resolved.

C.      *DIP Facility Claims*

The DIP Facility Claims shall be Allowed in full.  Except to the extent that a Holder of an Allowed DIP Facility Claim agrees to a less favorable treatment, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed DIP Facility Claim, each Holder of such Allowed DIP Facility Claim shall receive its allocated share of the New First Lien Term Loan Exit Facility on the Plan Effective Date.  For the avoidance of doubt, Priority First Lien Claims will be rolled into the DIP Facility upon entry of the Final DIP Order and shall receive the same treatment as Allowed DIP Facility Claims.

D.      *Priority Tax Claims*

Except to the extent that a Holder of an Allowed Priority Tax Claim agrees to a less favorable treatment, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Priority Tax Claim, each Holder of such Allowed Priority Tax Claim shall, with the reasonable consent of the Required DIP Lenders and the Required Consenting Lenders, either be paid in full in Cash, or otherwise be treated in accordance with the terms set forth in section 1129(a)(9)(C) of the Bankruptcy Code and, for the avoidance of doubt, Holders of Allowed Priority Tax Claims will receive interest on such Allowed Priority Tax Claims after the Effective Date in accordance with sections 511 and 1129(a)(9)(C) of the Bankruptcy Code.

E.      *Statutory Fees*

All fees due and payable pursuant to section 1930 of Title 28 of the United States Code before the Effective Date with respect to the Debtors shall be paid by the Debtors.  On and after the Effective Date, the Reorganized Debtors shall pay any and all such fees when due and payable, and shall file with the Bankruptcy Court quarterly reports in a form reasonably acceptable to the United States Trustee.  Each Debtor shall remain obligated to pay quarterly fees to the United States Trustee until the earliest of that particular Debtor's case being closed, dismissed, or converted to a case under Chapter 7 of the Bankruptcy Code.

**ARTICLE III.**
**CLASSIFICATION, TREATMENT, AND VOTING OF CLAIMS AND INTERESTS**

A.      *Classification of Claims and Interests*

This Plan constitutes a separate Plan proposed by each Debtor within the meaning of section 1121 of the Bankruptcy Code.  Except for the Claims addressed in Article II of this Plan, all Claims and Interests are classified in the Classes set forth below in accordance with section 1122 of the Bankruptcy Code.  A Claim or an Interest is classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest qualifies within the description of such other Classes.  A Claim or an Interest also is classified in a particular Class for the purpose of receiving distributions under the Plan only to the extent that such Claim or Interest is an Allowed Claim or Interest in that Class and has not been paid, released, or otherwise satisfied prior to the Effective Date.

This Plan groups the Debtors together solely for the purpose of describing treatment under the Plan, confirmation of the Plan, and making distributions in accordance with the Plan in respect of Claims against and Interests in the Debtors under the Plan.  Such groupings shall not affect any Debtor's status as a separate legal Entity, change the organizational structure of the Debtors' business enterprise, constitute a change of control of any Debtor for any purpose, cause a merger or consolidation of any legal Entities, or cause the transfer of any assets, and, except as otherwise provided by or permitted under the Plan, all Debtors shall continue to exist as separate legal Entities after the Effective Date.

The following chart represents the classification of Claims and Interests for each Debtor pursuant to the Plan:

| Class | Claim or Interest | Status | Voting Rights |
|-------|-------------------|--------|---------------|
| 1 | Other Secured Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| 2 | Other Priority Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| 3 | First Lien Secured Claims | Impaired | Entitled to Vote |
| 4 | Second Lien Claims | Impaired | Entitled to Vote |
| 5 | General Unsecured Claims | Impaired | Entitled to Vote |
| 6 | Intercompany Claims | Unimpaired / Impaired | Not Entitled to Vote (Deemed to Accept or Reject) |
| 7 | Intercompany Interests | Unimpaired / Impaired | Not Entitled to Vote (Deemed to Accept or Reject) |
| 8 | Existing Equity Interests | Impaired | Not Entitled to Vote (Deemed to Reject) |

Except as otherwise provided in the Plan, nothing under the Plan shall affect the rights of the Debtors or the Reorganized Debtors, as applicable, in respect of any Unimpaired Claims, including all rights in respect of legal and equitable defenses to, or setoffs or recoupments against, any such Unimpaired Claims.

B.      *Treatment of Classes of Claims and Interests*

To the extent a Class contains Allowed Claims or Allowed Interests with respect to any Debtor, the classification of Allowed Claims and Allowed Interests is specified below.

1.      Class 1 — Other Secured Claims

(a)      *Classification*:  Class 1 consists of all Other Secured Claims.

(b)      *Treatment*:  Except to the extent that a Holder of an Allowed Other Secured Claim agrees to a less favorable treatment of its Allowed Claim, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Other Secured Claim, each such Holder shall receive, subject to the reasonable consent of the Required DIP Lenders and the Required Consenting Lenders, either:

(i)      payment in full in Cash;

(ii)      delivery of the collateral securing any such Claim and payment of any interest required under section 506(b) of the Bankruptcy Code;

(iii)     Reinstatement of such Allowed Other Secured Claim under section 1124 of the Bankruptcy Code;

(iv)     such other treatment rendering its Allowed Other Secured Claim Unimpaired in accordance with section 1124 of the Bankruptcy Code; or

(v)      the indubitable equivalent of such Claim.

(c)     *Voting*: Class 1 is Unimpaired under the Plan. Holders of Allowed Other Secured Claims are conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code. Holders of Allowed Other Secured Claims are not entitled to vote to accept or reject the Plan.

2.     Class 2 — Other Priority Claims

(a)     *Classification*: Class 2 consists of all Other Priority Claims.

(b)     *Treatment*: Except to the extent that a Holder of an Allowed Other Priority Claim agrees to a less favorable treatment of its Allowed Claim, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Other Priority Claim, each such Holder shall receive either:

(i)      payment in full in Cash; or

(ii)     such other treatment rendering consistent with the provisions of section 1129(a)(9) of the Bankruptcy Code.

(c)     *Voting*: Class 2 is Unimpaired under the Plan. Holders of Allowed Other Priority Claims are conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code. Holders of Allowed Other Priority Claims are not entitled to vote to accept or reject the Plan.

3.     Class 3 — First Lien Secured Claims

(a)     *Classification*: Class 3 consists of all First Lien Secured Claims.

(b)     *Treatment*: On the Effective Date, all First Lien Secured Claims shall be Allowed in full. Except to the extent that a Holder of an Allowed First Lien Secured Claim agrees to a less favorable treatment of its Allowed Claim, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed First Lien Secured Claim, each such Holder shall receive:

(i)      with respect to any First Lien Credit Agreement L/C Secured Claims, participation in the New First Lien Exit L/C Facility in an amount equal to such Holder's First Lien Credit Agreement L/C Secured Claims;

(ii)     with respect to any First Lien Credit Agreement Secured Claims, its Pro Rata share of and/or interest in (A) 100% of the New Common Stock (subject to dilution by the Management Incentive Plan and the New Money DIP Fee); and (B) the New Second Lien Term Loan Exit Facility (in an aggregate amount of $50,000,000); or

18

          (iii)      in the event of an Alternative Transaction, treatment consistent with section 1129(a)(7) of the Bankruptcy Code.

    (c)    *Voting*:  Class 3 is Impaired under the Plan.  Holders of Allowed First Lien Secured Claims are entitled to vote to accept or reject the Plan.

4.      Class 4 — Second Lien Claims

    (a)    *Classification*:  Class 4 consists of all Second Lien Claims.

    (b)    *Treatment*:  On the Effective Date, each such Holder of a Second Lien Claim shall receive treatment consistent with section 1129(a)(7) of the Bankruptcy Code.

    (c)    *Voting*:  Class 4 is Impaired under the Plan.  Holders of Allowed Second Lien Claims are entitled to vote to accept or reject the Plan.

5.      Class 5 — General Unsecured Claims

    (a)    *Classification*:  Class 5 consists of all General Unsecured Claims.

    (b)    *Treatment*:  On the Effective Date, each such Holder of an Allowed General Unsecured Claim shall receive treatment consistent with section 1129(a)(7) of the Bankruptcy Code.

    (c)    *Voting*:  Class 5 is Impaired under the Plan.  Holders of Allowed General Unsecured Claims are entitled to vote to accept or reject the Plan.

6.      Class 6 — Intercompany Claims

    (a)    *Classification*:  Class 6 consists of all Intercompany Claims.

    (b)    *Treatment*:  Unless otherwise provided for under the Plan, each Allowed Intercompany Claim shall, on the Effective Date, be:

          (i)      Reinstated;

          (ii)      compromised, cancelled, set off, settled, canceled and released, contributed or distributed; or

          (iii)      otherwise addressed at the election of the Debtors, in each case of clauses (i)-(iii), subject to the consent of the Required DIP Lenders and the Required Consenting Lenders, such that Intercompany Claims are treated in a tax-efficient manner.

    (c)    *Voting*:  Holders of Allowed Intercompany Claims in Class 6 are either Unimpaired, and such Holders are conclusively deemed to have accepted the Plan pursuant to section 1126(f), or Impaired, and such Holders are conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Holders of Allowed Intercompany Claims are not entitled to vote to accept or reject the Plan.

7.      Class 7 — Intercompany Interests

    (a)    *Classification*:  Class 7 consists of all Intercompany Interests.

(b)      *Treatment*:  On the Effective Date, Intercompany Interests shall receive no recovery or distribution and shall be Reinstated solely to the extent necessary to maintain the Debtors' corporate structure.

(c)      *Voting*:  Holders of Intercompany Interests in Class 7 are either Unimpaired, and such Holders are conclusively deemed to have accepted the Plan pursuant to section 1126(f), or Impaired, and such Holders are conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Holders of Intercompany Interests are not entitled to vote to accept or reject the Plan.

8.      Class 8 —Existing Equity Interests

(a)      *Classification*:  Class 8 consists of all Existing Equity Interests.

(b)      *Treatment*:  On the Effective Date, each Allowed Existing Equity Interest shall be canceled, released, and extinguished without any distribution, and will be of no further force or effect.

(c)      *Voting*:  Class 8 is Impaired under the Plan.  Holders of Allowed Existing Equity Interests are conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Holders of Allowed Existing Equity Interests are not entitled to vote to accept or reject the Plan.

C.      *Special Provision Governing Unimpaired Claims*

Except as otherwise provided in the Plan, nothing under the Plan shall affect the Debtors' or Reorganized Debtors' rights regarding any Unimpaired Claim, including all rights regarding legal and equitable defenses to or setoffs or recoupments against any such Unimpaired Claim.

D.      *Elimination of Vacant Classes*

Any Class of Claims or Interests that does not have a Holder of an Allowed Claim or Allowed Interest or a Claim or Interest temporarily Allowed by the Bankruptcy Court as of the date of the Confirmation Hearing shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

E.      *Voting Classes; Presumed Acceptance by Non-Voting Classes*

If a Class contains Claims or Interests eligible to vote and no Holders of Claims or Interests eligible to vote in such Class vote to accept or reject the Plan, the Debtors shall request the Bankruptcy Court to deem the Plan accepted by the Holders of such Claims or Interests in such Class.

F.      *Subordinated Claims and Interests*

The allowance, classification, and treatment of all Allowed Claims and Allowed Interests and the respective distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise.  Pursuant to section 510 of the Bankruptcy Code, the Debtors or Reorganized Debtors, as applicable, subject to the reasonable consent of the Required Consenting Lenders, reserve the right to re-classify any Allowed Claim or Allowed Interest in accordance with any contractual, legal, or equitable subordination relating thereto.

G.      *Intercompany Interests*

To the extent Reinstated under the Plan, distributions on account of Intercompany Interests are not being received by Holders of such Intercompany Interests on account of their Intercompany Interests, but for the purposes

of administrative convenience and in exchange for the Debtors' and Reorganized Debtors' agreement under the Plan to provide management services to certain other Debtors and Reorganized Debtors, to use certain funds and assets as set forth in the Plan to make certain distributions and satisfy certain obligations of certain other Debtors and Reorganized Debtors to the holders of certain Allowed Claims. For the avoidance of doubt, any Interest in non-Debtor subsidiaries owned by a Debtor shall continue to be owned by the applicable Reorganized Debtor.

H.     *Controversy Concerning Impairment*

If a controversy arises as to whether any Claims or Interests, or any Class of Claims or Interests, are Impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date.

I.     *Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code*

Section 1129(a)(10) of the Bankruptcy Code shall be satisfied for purposes of Confirmation by acceptance of the Plan by one or more of the Classes entitled to vote pursuant to Article III of the Plan. The Debtors shall seek Confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code with respect to any rejecting Class of Claims or Interests. The Debtors reserve the right to modify the Plan in accordance with Article XI hereof to the extent, if any, that Confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification, including by modifying the treatment applicable to a Class of Claims to render such Class of Claims Unimpaired to the extent permitted by the Bankruptcy Code and the Bankruptcy Rules or to withdraw the Plan as to such Debtor.

# ARTICLE IV.
## MEANS FOR IMPLEMENTATION OF THE PLAN

A.     *General Settlement of Claims and Interests*

Unless otherwise set forth in the Plan, pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, distributions, releases, and other benefits provided under the Plan, upon the Effective Date, the provisions of the Plan shall constitute a good-faith compromise and settlement of all Claims and Interests and controversies resolved pursuant to the Plan. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims, Interests, and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtors, their Estates, and Holders of Claims and Interests and is fair, equitable, and is within the range of reasonableness. Subject to Article VI of the Plan, all distributions made to Holders of Allowed Claims and Allowed Interests in any Class are intended to be and shall be final.

B.     *Restructuring Transactions*

Following the Confirmation Date, the applicable Debtors or Reorganized Debtors shall take all actions set forth in the Restructuring Steps Memorandum and may take all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan that are consistent with and pursuant to the terms and conditions of the Plan and the Restructuring Support Agreement, which transactions may include, as applicable: (a) the execution and delivery of appropriate agreements or other documents of merger, amalgamation, consolidation, restructuring, reorganization, conversion, disposition, transfer, arrangement, continuance, dissolution, sale, purchase, or liquidation containing terms that are consistent with the terms of the Plan; (b) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property, right, liability, debt, or obligation on terms consistent with the terms of the Plan and having other terms to which the applicable parties agree; (c) the filing of appropriate certificates or articles of incorporation, reincorporation, formation, merger, consolidation, conversion, amalgamation, arrangement, continuance, or dissolution or other certificates or documentation for other transactions as described in clause (a), pursuant to applicable state law; (d) the execution and delivery of the New Shareholders Agreement and the New Organizational Documents and any certificates or articles of incorporation, bylaws, or such other applicable formation, organizational, governance, or constitutive documents (if any) of each Reorganized Debtor (including all actions to be taken, undertakings to be made, and obligations to be incurred and fees and expenses to be paid by the Debtors and/or the Reorganized Debtors, as applicable), and the issuance, distribution, reservation, or dilution, as applicable, of the

New Common Stock, as set forth herein; (e) the execution and delivery of the Exit Facilities Documents (including all actions to be taken, undertakings to be made, and obligations to be incurred and fees and expenses to be paid by the Debtors and/or the Reorganized Debtors, as applicable); (f) the adoption of the Management Incentive Plan and the issuance and reservation of equity thereunder to the participants in the Management Incentive Plan on the terms and conditions set by the Reorganized CPK Board after the Effective Date; and (f) all other actions that the applicable Entities determine to be necessary or appropriate, including making filings or recordings that may be required by applicable law in connection with the Restructuring Transactions.

C.      *Sources of Consideration for Plan Distributions*

The Debtors shall fund distributions under the Plan, as applicable, with:  (a) the New Common Stock; (b) the Exit Facilities; (c) and the Debtors' Cash on hand.  Each distribution and issuance referred to in Article VI of the Plan shall be governed by the terms and conditions set forth in the Plan applicable to such distribution or issuance and by the terms and conditions of the instruments or other documents evidencing or relating to such distribution or issuance, which terms and conditions shall bind each Entity receiving such distribution or issuance.  The issuance, distribution, or authorization, as applicable, of certain securities in connection with the Plan, including the New Common Stock, will be exempt from SEC registration, as described more fully in Article IV.E below.

1.      Issuance and Distribution of the New Common Stock

On the Effective Date, the New Common Stock shall be issued and distributed to the Entities entitled to receive the New Common Stock pursuant to the Plan in accordance with the Restructuring Steps Memorandum.  The issuance of New Common Stock by the Reorganized Debtors shall be authorized without the need for any further corporate action and without any action by the Holders of Claims or other parties in interest.  All of the New Common Stock issued under the Plan shall be duly authorized, validly issued, fully paid, and non-assessable.

Each distribution and issuance of the New Common Stock under the Plan shall be governed by the terms and conditions set forth in the Plan applicable to such distribution or issuance, as applicable, and by the terms and conditions of the instruments evidencing or relating to such distribution or issuance, as applicable, including the New Shareholders Agreement and the New Organizational Documents, which terms and conditions shall bind each Entity receiving such distribution of the New Common Stock.  Any Entity's acceptance of New Common Stock shall be deemed as its agreement to the New Organizational Documents and the New Shareholders Agreement, as the same may be amended or modified from time to time following the Effective Date in accordance with their respective terms. The New Common Stock will not be registered on any exchange as of the Effective Date and shall not meet the eligibility requirements of the Depository Trust Company.

2.      Exit Facilities

On and after the Effective Date, the Exit Facilities Documents shall constitute legal, valid, and binding obligations of the Reorganized Debtors and be enforceable in accordance with their respective terms.  The terms and conditions of the Exit Facilities Credit Agreements shall bind Reorganized CPK and each other Entity that enters into such Exit Facilities Credit Agreements as a guarantor.  Any Entity's entry into the Exit Facilities Credit Agreements shall be deemed as its agreement to the terms of such Exit Facilities Credit Agreements, as amended or modified from time to time following the Effective Date in accordance with its terms.

Confirmation shall be deemed approval of the Exit Facilities Documents (including the transactions contemplated thereby, and all actions to be taken, undertakings to be made, and obligations and guarantees to be incurred and fees paid in connection therewith), and, to the extent not approved by the Bankruptcy Court previously, the Reorganized Debtors will be authorized to execute and deliver those documents necessary or appropriate to obtain the Exit Facilities, including the Exit Facilities Documents, without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order or rule or vote, consent, authorization, or approval of any Person, subject to such modifications as the Debtors or Reorganized Debtors, as applicable, may deem to be necessary to consummate the Exit Facilities.

On the Effective Date, all of the Claims, Liens, and security interests to be granted in accordance with the terms of the Exit Facilities Documents (a) shall be legal, binding, and enforceable liens on, and security interests in, the collateral granted thereunder in accordance with the terms of the Exit Facilities Documents, (b) shall be deemed automatically attached and perfected on the Effective Date, subject only to such liens and security interests as may be permitted under the Exit Facilities Documents, and (c) shall not be subject to avoidance, recharacterization, or subordination (including equitable subordination) for any purposes whatsoever and shall not constitute preferential transfers, fraudulent conveyances, or other voidable transfers under the Bankruptcy Code or any applicable non-bankruptcy law.

       3.        Cash on Hand

The Debtors or Reorganized Debtors, as applicable, shall use Cash on hand, if any, to fund distributions to certain Holders of Claims.

**D.**       *New Shareholders Agreement*

On the Effective Date, Reorganized CPK shall enter into and deliver the New Shareholders Agreement to each Holder of New Common Stock, and such parties shall be bound thereby, in each case, without the need for execution by any party thereto other than Reorganized CPK, *provided* that Reorganized CPK shall be authorized to require each such Holder that receives New Common Stock on the Effective Date to execute and deliver its signature page to the New Shareholders Agreement as a condition to receiving its distribution of New Common Stock thereunder.

**E.**       *Exemption from Registration Requirements*

Pursuant to section 1145 of the Bankruptcy Code, the offering, issuance, and distribution of any Securities pursuant to and under the Plan, including the New Common Stock, is exempt from, among other things, the registration requirements of Section 5 of the Securities Act and any other applicable U.S. state or local law requiring registration prior to the offering, issuance, distribution, or sale of Securities. The shares of New Common Stock to be issued under the Plan (a) are not "restricted securities" as defined in Rule 144(a)(3) under the Securities Act, and (b) subject to the terms of the New Shareholders Agreement, are freely tradable and transferable by any initial recipient thereof that (1) is not an "affiliate" of the Debtors as defined in Rule 144(a)(1) under the Securities Act, (2) has not been such an "affiliate" within ninety (90) days of such transfer, and (3) is not an Entity that is an "underwriter" as defined in subsection (b) of section 1145 of the Bankruptcy Code.

**F.**       *Corporate Existence*

Except as otherwise provided in the Plan, the Plan Supplement, or pursuant to the Restructuring Steps Memorandum or Restructuring Transactions, each Debtor shall continue to exist after the Effective Date as a separate corporate entity, limited liability company, partnership, or other form, as the case may be, with all the powers of a corporation, limited liability company, partnership, or other form, as the case may be, pursuant to the applicable law in the jurisdiction in which each applicable Debtor is incorporated or formed and pursuant to the respective certificate of incorporation and bylaws (or other formation documents) in effect prior to the Effective Date, except to the extent such certificate of incorporation and bylaws (or other formation documents) are amended under the Plan or otherwise, and to the extent such documents are amended, such documents are deemed to be amended pursuant to the Plan and require no further action or approval (other than any requisite filings required under applicable state, provincial, or federal law).

**G.**       *Corporate Action*

On or before the Effective Date, as applicable, all actions contemplated under the Plan or the Plan Supplement shall be deemed authorized and approved in all respects, including: (a) adoption or assumption, as applicable, of the agreements with existing management; (b) selection of the directors, managers, and officers for the Reorganized Debtors; (c) implementation of the Restructuring Transactions; (d) the issuance and distribution of the New Common Stock, as applicable; (e) the applicable Reorganized Debtors' entry into the Exit Facilities and Exit

Facilities Documents, if applicable; and (f) all other actions contemplated under the Plan (whether to occur before, on, or after the Effective Date). All matters provided for in the Plan involving the corporate structure of the Debtors or the Reorganized Debtors, as applicable, and any corporate action required by the Debtors or the Reorganized Debtors in connection with the Plan shall be deemed to have occurred and shall be in effect, without any requirement of further action by the security holders, directors, managers, or officers of the Debtors or the Reorganized Debtors, as applicable. On or (as applicable) prior to the Effective Date, the appropriate officers of the Debtors or the Reorganized Debtors, as applicable, shall be authorized to issue, execute, and deliver the agreements, documents, securities, and instruments contemplated under the Plan (or necessary or desirable to effect the transactions contemplated under the Plan) in the name of and on behalf of the Reorganized Debtors, including the Exit Facilities Documents (if applicable), the Restructuring Steps Memorandum, and the New Shareholders Agreement, and any and all other agreements, documents, securities, and instruments relating to the foregoing and the Restructuring Transactions. The authorizations and approvals contemplated by this Article IV.G shall be effective notwithstanding any requirements under non-bankruptcy law.

H.      *Vesting of Assets in the Reorganized Debtors*

Except as otherwise provided in the Plan or the Plan Supplement, or in any agreement, instrument, or other document incorporated in the Plan, on the Effective Date, all property in each Debtor's Estate, all Causes of Action, and any property acquired by any of the Debtors under the Plan shall vest in each respective Reorganized Debtor, free and clear of all Liens, Claims, charges, or other encumbrances (except for Liens securing obligations under the Exit Facilities Documents, and the Liens securing obligations on account of Other Secured Claims that are Reinstated pursuant to the Plan, if any). On and after the Effective Date, except as otherwise provided in the Plan, each Reorganized Debtor may operate its business and may use, acquire, or dispose of property and compromise or settle any Claims, Interests, or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

I.      *Cancellation of Notes, Instruments, Certificates, and Other Documents*

On the Effective Date, except to the extent otherwise provided in the Plan, all notes, instruments, certificates, and other documents evidencing Claims shall be cancelled, and the obligations of the Debtors or the Reorganized Debtors and any non-Debtor Affiliates thereunder or in any way related thereto shall be deemed satisfied in full, cancelled, discharged, and of no force or effect. Holders of or parties to such cancelled notes, instruments, certificates, and other documents will have no rights arising from or relating to such notes, instruments, certificates, and other documents, or the cancellation thereof, except the rights provided for pursuant to this Plan.

J.      *Effectuating Documents; Further Transactions*

On and after the Effective Date, the Reorganized Debtors, and the officers and members of the boards of directors and managers thereof, are authorized to and may issue, execute, deliver, file, or record such contracts, Securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan, the Restructuring Support Agreement, the Exit Facilities Documents, the New Organizational Documents, the New Shareholders Agreement, and the Securities issued pursuant to the Plan in the name of and on behalf of the Reorganized Debtors, without the need for any approvals, authorizations, or consents except for those expressly required under the Plan.

K.      *Exemption from Certain Taxes and Fees*

To the fullest extent permitted by section 1146(a) of the Bankruptcy Code, any transfers (whether from a Debtor to a Reorganized Debtor or to any other Person) of property under the Plan or pursuant to: (a) the issuance, distribution, transfer, or exchange of any debt, equity security, or other Interest in the Debtors or the Reorganized Debtors, including the Exit Facilities and the New Common Stock; (b) the Restructuring Transactions; (c) the creation, modification, consolidation, termination, refinancing, and/or recording of any mortgage, deed of trust, or other security interest, or the securing of additional indebtedness by such or other means; (d) the making, assignment, or recording of any lease or sublease; (e) the grant of collateral as security for the Exit Facilities, as applicable; or (f) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance

24

of, or in connection with, the Plan, including any deeds, bills of sale, assignments, or other instrument of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan, in each case shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, or other similar tax or governmental assessment, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forego the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, recordation fee, or governmental assessment.  All filing or recording officers (or any other Person with authority over any of the foregoing), wherever located and by whomever appointed, shall comply with the requirements of section 1146(c) of the Bankruptcy Code, shall forego the collection of any such tax or governmental assessment, and shall accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

## L.  New Organizational Documents

The New Organizational Documents shall, among other things:  (a) authorize the issuance, distribution, and reservation of the New Common Stock to the Entities entitled to receive such Interests under the Plan; and (b) pursuant to and only to the extent required by section 1123(a)(6) of the Bankruptcy Code, prohibit the issuance of non-voting equity Securities.

On or immediately before the Effective Date, the Debtors or Reorganized CPK, as applicable, will file its New Organizational Documents with the applicable Secretary of State and/or other applicable authorities in its state of incorporation or formation in accordance with the applicable laws of their respective state of incorporation or formation, to the extent required for such New Organizational Documents to become effective.   After the Effective Date, Reorganized CPK may amend and restate its formation, organizational, and constituent documents as permitted by the laws of its respective jurisdiction of formation and the terms of such documents.

## M.  Directors and Officers

As of the Effective Date, the terms of the current members of the boards of directors of the Debtors shall have expired, and the officers of the Reorganized Debtors shall be appointed in accordance with the New Organizational Documents and other constituent documents of each Reorganized Debtor.  The Reorganized CPK Board shall initially consist of five (5) directors, including the chief executive officer of CPK.  The other members of the Reorganized CPK Board shall be determined by a board selection committee comprised by the three largest equity holders on a post-reorganization basis in accordance with the Plan, the Restructuring Support Agreement and/or the applicable New Organizational Documents.  Pursuant to section 1129(a)(5) of the Bankruptcy Code, the identities and affiliations of the members of the Reorganized CPK Board and any Person proposed to serve as an officer of the Reorganized Debtors shall be disclosed at or before the Confirmation Hearing, in each case to the extent the identity of such proposed director or officer is known at such time.

On the Effective Date, the officers and overall management structure of Reorganized CPK, and all officers and management decisions with respect to Reorganized CPK (and/or any of its direct or indirect subsidiaries), compensation arrangements, and affiliate transactions shall only be subject to the approval of the Reorganized CPK Board.

From and after the Effective Date, each director, officer, or manager of the Reorganized Debtors shall be appointed and serve pursuant to the terms of their respective charters and bylaws or other formation and constituent documents, including the New Shareholders Agreement and the New Organizational Documents, and applicable laws of the respective Reorganized Debtor's jurisdiction of formation.  To the extent that any such director or officer of the Reorganized Debtors is an "insider" under the Bankruptcy Code, the Debtors will disclose the nature of any compensation to be paid to such director or officer.

N.    *Management Incentive Plan*

Within ninety (90) days of its formation, the Reorganized CPK Board shall make a determination with respect to adoption of the Management Incentive Plan and shall determine an appropriate vesting schedule, including whether such plan is time-based, performance-based, or a combination of the two.  For the avoidance of doubt, the terms and conditions of the Management Incentive Plan (including any related agreements, policies, programs, other arrangements, and the Management Incentive Plan participants) shall be consistent in all respects with the Restructuring Support Agreement.

O.    *Preservation of Causes of Action*

Unless any Causes of Action against an Entity are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan, including pursuant to Article IX of the Plan or a Final Order, in accordance with section 1123(b) of the Bankruptcy Code, the Reorganized Debtors shall retain and may enforce all rights to commence and pursue any and all Causes of Action, whether arising before or after the Petition Date, including any actions specifically enumerated in any Definitive Documents or other disclosure included in the Plan Supplement, and the Reorganized Debtors' rights to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date.  No Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any Cause of Action against them as any indication that the Debtors or the Reorganized Debtors will not pursue any and all available Causes of Action against them.  The Debtors and the Reorganized Debtors expressly reserve all rights to prosecute any and all Causes of Action against any Entity, except as otherwise expressly provided herein.  Unless any Causes of Action against an Entity are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan, including pursuant to Article IX of the Plan or a Bankruptcy Court order, the Reorganized Debtors expressly reserve all Causes of Action, for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation or Consummation.  For the avoidance of doubt, in no instance will any Cause of Action preserved pursuant to this Article IV.O include any claim or Cause of Action with respect to, or against, a Released Party.

In accordance with section 1123(b)(3) of the Bankruptcy Code, any Causes of Action preserved pursuant to the first paragraph of this Article IV.O that a Debtor may hold against any Entity shall vest in the Reorganized Debtors. The applicable Reorganized Debtor, through its authorized agents or representatives, shall retain and may exclusively enforce any and all such Causes of Action.  The applicable Reorganized Debtor shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action, or to decline to do any of the foregoing, without the consent or approval of any third party or any further notice to or action, order, or approval of the Bankruptcy Court.

P.    *Release of Avoidance Actions*

On the Effective Date, the Debtors, on behalf of themselves and their Estates, shall release any and all Avoidance Actions, and the Debtors, the Reorganized Debtors, and any of their successors or assigns, and any Entity acting on behalf of the Debtors or the Reorganized Debtors shall be deemed to have waived the right to pursue any and all Avoidance Actions, except for Avoidance Actions brought as counterclaims or defenses to Claims asserted against the Debtors.

Q.    *Alternative Transaction*

Following the Petition Date and in parallel with the Restructuring Transactions, the Debtors shall continue their sale and marketing process and solicit bids for the Alternative Transaction, in accordance with the terms and conditions of the Restructuring Support Agreement.  At any point, the Debtors, with the consent of the Required Consenting Lenders and Supermajority Required DIP Lenders, may terminate pursuit of the Alternative Transaction in accordance with the terms of the Bidding Procedures Order and solely effectuate the Restructuring Transactions.

In the event that the Debtors, with the consent of the Required Consenting Lenders and Required DIP Lenders, determine to effectuate the Alternative Transaction before the Confirmation Hearing, the Confirmation Order

shall be deemed to authorize all actions as may be necessary or appropriate to effectuate the Alternative Transaction, including, among other things, transferring any purchased assets and interests to be transferred to and vested in any purchaser free and clear of all Liens, Claims, charges or other encumbrances pursuant to the terms of any purchase agreement, approve the Asset Purchase Agreement, and authorize the Debtors, or Reorganized Debtors, as applicable, to undertake the transactions contemplated by the Asset Purchase Agreement, including pursuant to sections 363, 365, 1123(a)(5)(B), and 1123(a)(5)(D) of the Bankruptcy Code.

If the Alternative Transaction occurs, the following provisions shall govern:

1.      *Sources of Consideration for Plan Distributions*

The Reorganized Debtors will fund distributions under the Plan with (a) Cash on hand on the Effective Date and (b) the revenues and proceeds of all assets of the Debtors, including the proceeds of the Alternative Transaction pursuant to the Asset Purchase Agreement and proceeds from all Causes of Action not settled, released, discharged, enjoined, or exculpated under the Plan or otherwise on or prior to the Effective Date.

Notwithstanding anything to the contrary in the Plan or in the Asset Purchase Agreement, on the Effective Date, any Cause of Action not settled, released, discharged, enjoined, or exculpated under the Plan on or prior to the Effective Date shall vest in the Reorganized Debtors and shall be subject to administration by the Plan Administrator.

2.      *Corporate Existence*

On and after the Effective Date, the Reorganized Debtors shall continue in existence for purposes of (a) winding down the Debtors' business and affairs as expeditiously as reasonably possible; (b) resolving Disputed Claims; (c) making distributions on account of Allowed Claims as provided hereunder; (d) establishing and funding the Distribution Reserve Accounts; (e) enforcing and prosecuting claims, interests, rights, and privileges under the schedule of retained Causes of Action in an efficacious manner and only to the extent the benefits of such enforcement or prosecution are reasonably believed to outweigh the costs associated therewith; (f) filing appropriate tax returns; (g) complying with their continuing obligations under the Asset Purchase Agreement, if any, and the DIP Orders; and (h) administering the Plan in an efficacious manner.  The Reorganized Debtors shall be deemed to be substituted as the party-in-lieu of the Debtors in all matters, including (i) motions, contested matters, and adversary proceedings pending in the Bankruptcy Court, (ii) DIP Orders, and (iii) all matters pending in any courts, tribunals, forums, or administrative proceedings outside of the Bankruptcy Court, in each case without the need or requirement for the Plan Administrator or the Reorganized Debtors to file motions or substitutions of parties or counsel in each such matter.

3.      *Corporate Action*

Upon the Effective Date, all actions contemplated under the Plan, regardless of whether taken before, on, or after the Effective Date, shall be deemed authorized and approved in all respects, including:  (a) the implementation of the Alternative Transaction; (b) closing of the Asset Purchase Agreement; and (c) all other actions contemplated under or necessary to implement the Plan (whether to occur before, on, or after the Effective Date).  All matters provided for in the Plan or deemed necessary or desirable by the Debtors before, on, or after the Effective Date involving the corporate structure of the Debtors or the Reorganized Debtors, and any corporate action required by the Debtors or the Reorganized Debtors in connection with the Plan or corporate structure of the Debtors or Reorganized Debtors, shall be deemed to have occurred and shall be in effect on the Effective Date, without any requirement of further action by the security holders, directors, managers, or officers of the Debtors or the Reorganized Debtors. Before, on, or after the Effective Date, the appropriate officers of the Debtors or the Reorganized Debtors, as applicable, shall be authorized to issue, execute, and deliver the agreements, documents, securities, and instruments contemplated under the Plan (or necessary or desirable to effect the transactions contemplated under the Plan) in the name of and on behalf of the Reorganized Debtors.  The authorizations and approvals contemplated by this Article IV.Q shall be effective notwithstanding any requirements under non-bankruptcy law.

4.      *Vesting of Assets in the Reorganized Debtors*

Except as otherwise provided in the Plan, the Confirmation Order, the Asset Purchase Agreement, or any agreement, instrument, or other document incorporated herein or therein, or in any agreement, instrument, or other document incorporated in the Plan or the Plan Supplement, on the Effective Date, the assets of the Debtors that are not transferred to the Purchaser pursuant to the Asset Purchase Agreement, if any, shall vest in the Reorganized Debtors free and clear of all Liens, Claims, charges, or other encumbrances; *provided* that, subject to funding the Professional Fee Escrow Account, the collateral, or proceeds of sales of such collateral, of the Reorganized Debtors securing the DIP Facility Claims shall remain subject to the liens and claims of the DIP Lenders to the same extent as such liens and claims were enforceable against the Debtors and the Debtors' assets until such DIP Facility Claims are satisfied as set forth in Article II.C.  On and after the Effective Date, except as otherwise provided for in the Plan, the DIP Orders, or the Asset Purchase Agreement, the Debtors and the Reorganized Debtors may operate their business and use, acquire, or dispose of property and compromise or settle any Claims, Interests, or Causes of Action.

5.      *Effectuating Documents; Further Transactions*

Prior to the Effective Date, the Debtors and, on and after the Effective Date, the Reorganized Debtors, the Plan Administrator, and the officers and members thereof, are authorized to and may issue, execute, deliver, file, or record to the extent not inconsistent with any provision of this Plan such contracts, securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan, without the need for any approvals, authorizations, notice, or consents, except for those expressly required pursuant to the Plan.

6.      *Preservation of Causes of Action*

Unless any Cause of Action against an Entity is expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Final Order, in accordance with section 1123(b) of the Bankruptcy Code, the Debtors shall convey to the Plan Administrator all rights to commence, prosecute, or settle, as appropriate, any and all Causes of Action, whether arising before or after the Petition Date, which shall vest in the Plan Administrator pursuant to the terms of the Plan.  The Plan Administrator may enforce all rights to commence, prosecute, or settle, as appropriate, any and all Causes of Action, whether arising before or after the Petition Date, and the Plan Administrator's rights to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date.  The Plan Administrator may, in its reasonable business judgment, pursue such Causes of Action and may retain and compensate professionals in the analysis or pursuit of such Causes of Action to the extent the Plan Administrator deems appropriate, including on a contingency fee basis.  No Entity may rely on the absence of a specific reference in the Plan or the Disclosure Statement to any Cause of Action against them as any indication that the Debtors or the Plan Administrator will not pursue any and all available Causes of Action against them.  The Debtors and the Plan Administrator expressly reserve all rights to prosecute any and all Causes of Action against any Entity, except as otherwise expressly provided in the Plan; *provided* that the Debtors, in consultation with the Plan Administrator after the Effective Date, may prosecute any such Cause of Action against any party only in connection with their objection to and resolution of any Claim asserted by such party.  Unless any Cause of Action against an Entity is expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Final Order, the Plan Administrator expressly reserves all Causes of Action for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation or Consummation.  The Plan Administrator reserves and shall retain the foregoing Causes of Action notwithstanding the rejection of any Executory Contract or Unexpired Lease during the Chapter 11 Cases or pursuant to the Plan.  The Plan Administrator shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action, or to decline to do any of the foregoing, without the consent or approval of any third party or any further notice to, or action, order, or approval of, the Bankruptcy Court.

7.      *Release of Liens*

Except as otherwise expressly provided herein or in the Confirmation Order, on the Effective Date, all Liens on any property of any Debtors or the Reorganized Debtors shall automatically terminate, all property subject to such

Liens shall be automatically released, and all guarantees of any Debtors or the Reorganized Debtors shall be automatically discharged and released; *provided, however*, that notwithstanding anything to the contrary set forth in this Plan, subject to the funding of the Professional Fee Escrow Account, until the DIP Facility Claims are satisfied in accordance with Article II.C hereof (a) all Liens of the DIP Lenders on any property of any Debtors or the Reorganized Debtors shall remain valid, binding, and in full effect on and after the Effective Date, and (b) the proceeds of sales of any collateral of the Reorganized Debtors securing the DIP Facility Claims shall remain subject to the liens and claims of the DIP Lenders, as applicable, to the same extent as such liens and claims were enforceable against the Debtors and the Debtors' assets, in each case until the DIP Lenders receive their distributions or other treatment in accordance with Article II.C.

8. *Plan Administrator*

The Plan Administrator shall act for the Reorganized Debtors in the same fiduciary capacity as applicable to a board of managers, directors, and officers, subject to the provisions hereof (and all certificates of formation, membership agreements, and related documents are deemed amended by the Plan to permit and authorize the same). On the Effective Date, the authority, power, and incumbency of the persons acting as managers, directors, or sale director of the Reorganized Debtors shall be deemed to have resigned, solely in their capacities as such, and the Plan Administrator shall be appointed as the sole manager, sole director, and sole officer of the Reorganized Debtors, and shall succeed to the powers of the Reorganized Debtors' managers, directors, and officers. From and after the Effective Date, the Plan Administrator shall be the sole representative of, and shall act for, the Reorganized Debtors. The foregoing shall not limit the authority of the Reorganized Debtors or the Plan Administrator, as applicable, to continue the employment any former manager or officer, including pursuant to any transition services agreement entered into on or after the Effective Date by and between the Reorganized Debtors and the Purchaser.

## ARTICLE V.
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

A.    *Assumption of Executory Contracts and Unexpired Leases*

On the Effective Date, except as otherwise provided in the Plan or in any contract, instrument, release, indenture, or other agreement or document entered into in connection with the Plan, all Executory Contracts and Unexpired Leases shall be deemed assumed, without the need for any further notice to or action, order, or approval of the Bankruptcy Court, as of the Effective Date under section 365 of the Bankruptcy Code, and regardless of whether such Executory Contract or Unexpired Lease is identified on the Assumed Executory Contract and Unexpired Lease List, unless such Executory Contract and Unexpired Lease: (a) was assumed or rejected previously by the Debtors; (b) previously expired or terminated pursuant to its own terms; (c) is the subject of a motion to reject filed on or before the Effective Date; or (d) is identified on the Rejected Executory Contract and Unexpired Lease List.

Entry of the Confirmation Order shall constitute a Bankruptcy Court order approving the assumption, assumption and assignment, or rejection, as applicable, of such Executory Contracts or Unexpired Leases as set forth in the Plan, the Assumed Executory Contract and Unexpired Lease List, and the Rejected Executory Contract and Unexpired Leases List, as applicable, pursuant to sections 365(a) and 1123 of the Bankruptcy Code. Unless otherwise indicated, assumptions, assumptions and assignments, or rejections of Executory Contracts and Unexpired Leases pursuant to the Plan are effective as of the Effective Date. Each Executory Contract or Unexpired Lease assumed pursuant to the Plan or by Bankruptcy Court order but not assigned to a third party before the Effective Date shall re-vest in and be fully enforceable by the applicable contracting Reorganized Debtor in accordance with its terms, except as such terms may have been modified by the provisions of the Plan or any order of the Bankruptcy Court authorizing and providing for its assumption under applicable federal law. Any motions to assume Executory Contracts or Unexpired Leases pending on the Effective Date shall be subject to approval by the Bankruptcy Court on or after the Effective Date by a Final Order. Notwithstanding anything to the contrary in the Plan, the Debtors or the Reorganized Debtors, as applicable, reserve the right to alter, amend, modify, or supplement the Rejected Executory Contract and Unexpired Lease List and the Assumed Executory Contract and Unexpired Lease List at any time through and including thirty (30) days after the Effective Date.

To the maximum extent permitted by law, to the extent that any provision in any Executory Contract or Unexpired Lease assumed or assumed and assigned pursuant to the Plan restricts or prevents, purports to restrict or

prevent, or is breached or deemed breached by, the assumption or assumption and assignment of such Executory Contract or Unexpired Lease (including any "change of control" provision), then such provision shall be deemed modified such that the transactions contemplated by the Plan shall not entitle the non-Debtor party thereto to terminate such Executory Contract or Unexpired Lease or to exercise any other default-related rights with respect thereto.

B.      *Claims Based on Rejection of Executory Contracts or Unexpired Leases*

Unless otherwise provided by a Final Order of the Bankruptcy Court, all Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases, pursuant to the Plan or the Confirmation Order, if any, must be filed with the Solicitation Agent and served on the Reorganized Debtors no later than thirty (30) days after the effective date of such rejection.

**Any Claims arising from the rejection of an Executory Contract or Unexpired Lease not filed with the Solicitation Agent within such time will be automatically disallowed, forever barred from assertion, and shall not be enforceable against the Debtors, the Reorganized Debtors, the Estates, or their property, without the need for any objection by the Debtors or Reorganized Debtors, or further notice to, action, order, or approval of the Bankruptcy Court or any other Entity, and any Claim arising out of the rejection of the Executory Contract or Unexpired Lease shall be deemed fully satisfied, released, and discharged, and be subject to the permanent injunction set forth in Article IX.G of the Plan, notwithstanding anything in a Proof of Claim to the contrary.**

All Claims arising from the rejection by any Debtor of any Executory Contract or Unexpired Lease pursuant to section 365 of the Bankruptcy Code shall be treated as a General Unsecured Claim pursuant to Article III of the Plan and may be objected to in accordance with the provisions of Article VIII of the Plan and the applicable provisions of the Bankruptcy Code and Bankruptcy Rules.

C.      *Cure of Defaults and Objections to Cure and Assumption*

Any monetary defaults under each Executory Contract and Unexpired Lease to be assumed pursuant to the Plan shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the default amount in Cash on the Effective Date or in the ordinary course of business, subject to the limitation described below, or on such other terms as the parties to such Executory Contracts or Unexpired Leases may otherwise agree.

In the event of a dispute regarding:  (a) the amount of any payments to cure such a default; (b) the ability of the Reorganized Debtors or any assignee to provide adequate assurance of future performance under the Executory Contract or Unexpired Lease to be assumed; or (c) any other matter pertaining to assumption, the cure payments required by section 365(b)(1) of the Bankruptcy Code shall be made following either (1) the entry of a Final Order or orders resolving the dispute and approving the assumption or (2) the settlement of the dispute between the parties which may be entered into without further order of the Bankruptcy Court.

Assumption of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall result in the full release and satisfaction of any defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time prior to the effective date of assumption.  For the avoidance of doubt, assumption of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall not override or otherwise release any indemnification obligations in such Executory Contract or Unexpired Lease. **Any Proof of Claim filed with respect to an Executory Contract or Unexpired Lease that has been assumed shall be deemed disallowed and expunged, without further notice to or action, order, or approval of the Bankruptcy Court.**

D.      *Director & Officer Liability Insurance*

The Reorganized Debtors shall assume their existing D&O liability insurance policies, to the extent that the D&O Liability Insurance Policies are considered to be Executory Contracts, or purchase new D&O liability insurance

policies for directors, officers, employees, attorneys, or other professionals and agents of the Reorganized Debtors on terms and conditions acceptable to the Required Consenting Lenders and the Required DIP Lenders.

E.      *Employment Obligations and Programs*

The Reorganized Debtors shall adopt, assume, and/or honor in the ordinary course of business any written employee contracts, agreements, policies, and programs, subject in all respects to the consent of the Required Consenting Lenders; *provided* that the Debtors shall include on the Assumed Executory Contracts and Unexpired Lease List, subject to the Restructuring Support Agreement, the Deferred Compensation Plan; *provided* that any assumption of the accrued obligations under the Deferred Compensation Plan contemplated hereunder shall be solely up to the balance of the related grantor trust as of the Petition Date. To the extent the liabilities under the Deferred Compensation Plan as of the Plan Effective Date exceed the trust balance as of the Petition Date, any account balance assumed in excess of $500,000 for any individual shall be reduced on a proportionate basis by the amount of (but by no more than) such excess.

F.      *Modifications, Amendments, Supplements, Restatements, or Other Agreements*

Unless otherwise provided in the Plan, each Executory Contract or Unexpired Lease that is assumed shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such Executory Contract or Unexpired Lease, and Executory Contracts and Unexpired Leases related thereto, if any, including easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless any of the foregoing agreements has been previously rejected or repudiated or is rejected or repudiated under the Plan.

Modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtors during the Chapter 11 Cases shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease, or the validity, priority, or amount of any Claims that may arise in connection therewith.

G.      *Reservation of Rights*

Nothing contained in the Plan or the Plan Supplement shall constitute an admission by the Debtors or any other party that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that any Reorganized Debtor has any liability thereunder. If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption, the Debtors or the Reorganized Debtors, as applicable, shall have thirty (30) calendar days following entry of a Final Order resolving such dispute to alter their treatment of such contract or lease, including by rejecting such contract or lease *nunc pro tunc* to the Confirmation Date.

H.      *Nonoccurrence of Effective Date*

In the event that the Effective Date does not occur, the Bankruptcy Court shall retain jurisdiction with respect to any request to extend the deadline for assuming or rejecting Unexpired Leases pursuant to section 365(d)(4) of the Bankruptcy Code, unless such deadline(s) have expired.

I.      *Contracts and Leases Entered Into After the Petition Date*

Contracts and leases entered into after the Petition Date by any Debtor and any Executory Contracts and Unexpired Leases assumed by any Debtor may be performed by the applicable Reorganized Debtor in the ordinary course of business.

# ARTICLE VI.
# PROVISIONS GOVERNING DISTRIBUTIONS

A.      *Timing and Calculation of Amounts to Be Distributed*

Unless otherwise provided in the Plan, on the Effective Date (or if a Claim or Interest is not an Allowed Claim or Interest on the Effective Date, on the date that such Claim becomes an Allowed Claim or Interest), each Holder of an Allowed Claim and Interest shall receive the full amount of the distributions that the Plan provides for Allowed Claims and Interests in each applicable Class and in the manner provided in the Plan. If any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date. If and to the extent that there are Disputed Claims or Interests, distributions on account of any such Disputed Claims or Interests shall be made pursuant to the provisions set forth in Article VIII. Except as otherwise provided in the Plan, Holders of Claims and Interests shall not be entitled to interest, dividends, or accruals on the distributions provided for in the Plan, regardless of whether such distributions are delivered on or at any time after the Effective Date. The Debtors shall have no obligation to recognize any transfer of Claims or Interests occurring on or after the Distribution Record Date.

B.      *Distribution Agent*

Except as otherwise provided in the Plan, all distributions under the Plan shall be made by the Distribution Agent on the Effective Date. The Distribution Agent shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court.

C.      *Rights and Powers of Distribution Agent*

1.      Powers of the Distribution Agent

The Distribution Agent shall be empowered to: (a) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties under the Plan; (b) make all distributions contemplated hereby; (c) employ professionals to represent it with respect to its responsibilities; and (d) exercise such other powers as may be vested in the Distribution Agent by order of the Bankruptcy Court, pursuant to the Plan, or as deemed by the Distribution Agent to be necessary and proper to implement the provisions hereof.

2.      Expenses Incurred On or After the Effective Date

Except as otherwise ordered by the Bankruptcy Court, the amount of any reasonable fees and out-of-pocket expenses incurred by the Distribution Agent on or after the Effective Date (including taxes) and any reasonable compensation and out-of-pocket expense reimbursement claims (including reasonable, actual, and documented attorney and/or other professional fees and expenses) made by the Distribution Agent shall be paid in Cash by the Reorganized Debtors.

D.      *Delivery of Distributions*

1.      Delivery of Distributions in General

Except as otherwise provided in the Plan, distributions to Holders of Allowed Claims shall be made to Holders of record as of the Distribution Record Date by the Reorganized Debtors or the Distribution Agent, as appropriate: (a) to the signatory set forth on any Proof of Claim or Proof of Interest filed by such Holder or other representative identified therein (or at the last known addresses of such Holder if no Proof of Claim or Proof of Interest is filed or if the Debtors have not been notified in writing of a change of address); (b) at the addresses set forth in any written notices of address changes delivered to the Reorganized Debtors or the applicable Distribution Agent, as appropriate, after the date of any related Proof of Claim or Proof of Interest; or (c) on any counsel that has appeared in the Chapter 11 Cases on the Holder's behalf. Subject to this Article VI, distributions under the Plan on account of Allowed Claims shall not be subject to levy, garnishment, attachment, or like legal process, so that each Holder of an

Allowed Claim shall have and receive the benefit of the distributions in the manner set forth in the Plan. The Debtors, the Reorganized Debtors, and the Distribution Agent, as applicable, shall not incur any liability whatsoever on account of any distributions under the Plan except for fraud, gross negligence, or willful misconduct.

2.      Undeliverable Distributions and Unclaimed Property

In the event that any distribution to any Holder is returned as undeliverable, no distribution to such Holder shall be made unless and until the Distribution Agent has determined the then-current address of such Holder, at which time such distribution shall be made to such Holder without interest; *provided*, *however*, that such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of six months from the later of (a) the Effective Date and (b) the date of the distribution. After such date, all unclaimed property or interests in property shall revert to the Reorganized Debtors automatically and without need for a further order by the Bankruptcy Court (notwithstanding any applicable federal, provincial, or state escheat, abandoned, or unclaimed property laws to the contrary), and the Claim of any Holder to such property or interest in property shall be discharged of and forever barred.

3.      No Fractional Distributions

No fractional shares of the New Common Stock shall be distributed and no Cash shall be distributed in lieu of such fractional amounts. When any distribution pursuant to the Plan on account of an applicable Allowed Claim would otherwise result in the issuance of a number of shares of New Common Stock that is not a whole number, the actual distribution of shares of New Common Stock shall be rounded as follows:  (a) fractions of one-half (½) or greater shall be rounded to the next higher whole number and (b) fractions of less than one-half (½) shall be rounded to the next lower whole number with no further payment therefor. The total number of authorized shares of New Common Stock shall be adjusted as necessary to account for the foregoing rounding.

4.      Minimum Distributions

Notwithstanding anything herein to the contrary, the Reorganized Debtors and Distribution Agent shall not be required to make distributions or payments of less than $50 (whether by Cash or otherwise).

E.      *Manner of Payment*

1.      All distributions of the New Common Stock to the Holders of the applicable Allowed Claims under the Plan shall be made by the Distribution Agent on behalf of the Debtors or Reorganized Debtors, as applicable.

2.      All distributions of Cash to the Holders of the applicable Allowed Claims under the Plan shall be made by the Distribution Agent on behalf of the applicable Debtor or Reorganized Debtor.

3.      At the option of the Distribution Agent, any Cash payment to be made under the Plan may be made by check or wire transfer or as otherwise required or provided in applicable agreements.

F.      *Compliance Matters*

In connection with the Plan, to the extent applicable, the Reorganized Debtors and the Distribution Agent shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all distributions pursuant to the Plan shall be subject to such withholding and reporting requirements. Notwithstanding any provision in the Plan to the contrary, the Reorganized Debtors and the Distribution Agent shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions, or establishing any other mechanisms they believe are reasonable and appropriate. The Reorganized Debtors reserve the right to allocate all distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child support, and other spousal awards, liens, and encumbrances.

G.      *No Postpetition or Default Interest on Claims*

Unless otherwise specifically provided for in the Plan or any final order of the Bankruptcy Court (including without limitation the Confirmation Order and DIP Orders), (a) postpetition and/or default interest shall not accrue or be paid on any Claims and (b) no Holder of a Claim shall be entitled to:  (1) interest accruing on or after the Petition Date on any such Claim; or (2) interest at the contract default rate, as applicable.

H.      *Allocation Between Principal and Accrued Interest*

Except as otherwise provided in the Plan, the aggregate consideration paid to Holders with respect to their Allowed Claims shall be treated pursuant to the Plan as allocated first to the principal amount of such Allowed Claims (to the extent thereof) and, thereafter, to the interest, if any, on such Allowed Claim accrued through the Petition Date.

I.      *Setoffs and Recoupment*

Unless otherwise provided in the Plan or the Confirmation Order, each Debtor and each Reorganized Debtor, pursuant to the Bankruptcy Code (including section 553 of the Bankruptcy Code), applicable non-bankruptcy law, or as may be agreed to by the Holder of a Claim, may set off against or recoup any Allowed Claim and the distributions to be made pursuant to the Plan on account of such Allowed Claim (before any distribution is made on account of such Allowed Claim), any claims, rights, and Causes of Action of any nature that such Debtor or Reorganized Debtor, as applicable, may hold against the Holder of such Allowed Claim, to the extent such claims, rights, or Causes of Action against such Holder have not been otherwise compromised or settled as of the Effective Date (whether pursuant to the Plan or otherwise); *provided*, *however*, that neither the failure to effect such a setoff or recoupment nor the allowance of any Claim pursuant to the Plan shall constitute a waiver or release by such Debtor or Reorganized Debtor of any such claims, rights, and Causes of Action that such Reorganized Debtor may possess against such Holder.  In no event shall any Holder of Claims be entitled to set off or recoup any such Claim against any claim, right, or Cause of Action of the Debtor or Reorganized Debtor (as applicable), unless such Holder has filed a motion with the Bankruptcy Court requesting the authority to perform such setoff or recoupment on or before the Confirmation Date, and notwithstanding any indication in any Proof of Claim or otherwise that such Holder asserts, has, or intends to preserve any right of setoff or recoupment pursuant to section 553 of the Bankruptcy Code or otherwise.

J.      *Claims Paid or Payable by Third Parties*

      1.      Claims Paid by Third Parties

A Claim shall be reduced in full or in part, as applicable, and such Claim shall be disallowed in full or in part, as applicable, without an objection to such Claim having to be filed and without any further notice to or action, order, or approval of the Bankruptcy Court, to the extent that the Holder of such Claim receives payment in full or in part on account of such Claim from a party that is not a Debtor or Reorganized Debtor.  To the extent that a Holder of a Claim receives a distribution on account of such Claim and receives payment from a party that is not a Debtor or a Reorganized Debtor on account of such Claim, such Holder shall repay, return, or deliver any distribution held by or transferred to the Holder to the applicable Reorganized Debtor to the extent the Holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such distribution under the Plan.

      2.      Claims Payable by Third Parties

The availability, if any, of insurance policy proceeds for the satisfaction of an Allowed Claim shall be determined by the terms of the insurance policies of the Debtors or Reorganized Debtors, as applicable.  To the extent that one or more of the Debtors' insurers agrees to satisfy in full a Claim (if and to the extent adjudicated by a court of competent jurisdiction), then immediately upon any such insurer's agreement, such Claim may be expunged to the extent of any agreed upon satisfaction on the Claims Register by the Solicitation Agent without a Claim objection having to be filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

3.       Applicability of Insurance Policies

Except as otherwise provided in the Plan, distributions to Holders of Allowed Claims shall be in accordance with the provisions of an applicable insurance policy.  Nothing contained in the Plan shall constitute or be deemed a waiver of any Cause of Action that the Debtors or any Entity may hold against any other Entity, including insurers under any policies of insurance, nor shall anything contained in the Plan constitute or be deemed a waiver by such insurers of any defenses, including coverage defenses, held by such insurers.

**ARTICLE VII.**
**THE PLAN ADMINISTRATOR**

The following provisions shall apply only if the Alternative Transaction occurs and a Plan Administrator is appointed.

A.       *The Plan Administrator*

The powers of the Plan Administrator shall include any and all powers and authority to implement the Plan and to administer and distribute the Distribution Reserve Accounts and wind down the business and affairs of the Debtors or the Reorganized Debtors, as applicable, including:  (a) liquidating, receiving, holding, investing, supervising, and protecting the assets of the Reorganized Debtors; (b) taking all steps to execute all instruments and documents necessary to effectuate the distributions to be made under the Plan from the Distribution Reserve Accounts; (c) making distributions from the Distribution Reserve Accounts as contemplated under the Plan; (d) establishing and maintaining bank accounts in the name of the Reorganized Debtors; (e) subject to the terms set forth herein, employing, retaining, terminating, or replacing professionals to represent the Plan Administrator with respect to the Plan Administrator's responsibilities or otherwise effectuating the Plan to the extent necessary; (f) paying all reasonable fees, expenses, debts, charges, and liabilities of the Reorganized Debtors; (g) administering and paying taxes of the Reorganized Debtors, including filing tax returns; (h) representing the interests of the Reorganized Debtors or the Estates, as applicable, before any taxing authority in all matters, including any action, suit, proceeding, or audit; (i) closing the sale pursuant to the Asset Purchase Agreement; and (j) exercising such other powers as may be vested in it pursuant to order of the Bankruptcy Court or pursuant to the Plan, or as it reasonably deems to be necessary and proper to carry out the provisions of the Plan.  To the extent that all First Lien Secured Claims are not paid or otherwise satisfied in full, the Plan Administrator shall provide the Required Consenting Lenders with all non-privileged budgets, records, projections, financial information, reports and other information that the Required Consenting Lenders (or its consultants and advisors) may reasonably request.

The Plan Administrator may resign at any time upon 30 days' written notice delivered to the Bankruptcy Court; *provided* that such resignation shall only become effective upon the appointment of a permanent or interim successor Plan Administrator.  Upon its appointment, the successor Plan Administrator, without any further act, shall become fully vested with all of the rights, powers, duties, and obligations of its predecessor and all responsibilities of the predecessor Plan Administrator relating to the Reorganized Debtors shall be terminated.

1.       Plan Administrator Rights and Powers

The Plan Administrator shall retain and have all the rights, powers, and duties necessary to carry out its responsibilities under this Plan, and as otherwise provided in the Confirmation Order.  The Plan Administrator shall be the representative of the Estates appointed pursuant to section 1123(b)(3)(B) of the Bankruptcy Code.

2.       Retention of Professionals

The Plan Administrator shall have the right to retain the services of attorneys, accountants, and other professionals that, in the discretion of the Plan Administrator, are necessary to assist the Plan Administrator in the performance of its duties.  The reasonable fees and expenses of such professionals shall be paid from the Plan Administrator Assets upon the monthly submission of statements to the Plan Administrator.  The payment of the reasonable fees and expenses of the Plan Administrator's retained professionals shall be made in the ordinary course of business from the Plan Administrator Assets and shall not be subject to the approval of the Bankruptcy Court.  To

the extent that all First Lien Secured Claims are not paid or otherwise satisfied in full, any professionals retained by the Plan Administrator shall be subject to approval by the Required DIP Lenders and the Required Consenting Lenders.

Until all First Lien Secured Claims are paid or otherwise satisfied in full, the Required Consenting Lenders shall have the right to retain the services of attorneys, accountants, and other professionals that, in the discretion of the Required Consenting Lenders with the consent of the Debtors, are necessary or desirable to assist the Required Consenting Lenders. The reasonable fees and expenses of such professionals shall be paid by the Reorganized Debtors from the Distribution Proceeds within five business days of submission of statements to the Plan Administrator. The payment of the reasonable fees and expenses of the Required Consenting Lenders' retained professionals shall be made in the ordinary course of business from the Distribution Proceeds and shall not be subject to the approval of the Bankruptcy Court.

   3.   Compensation of the Plan Administrator

The Plan Administrator's compensation, on a post-Effective Date basis, shall be as described in the Plan Supplement. Except as otherwise ordered by the Bankruptcy Court, the fees and expenses incurred by the Plan Administrator on or after the Effective Date (including taxes imposed on the Reorganized Debtors) and any reasonable compensation and expense reimbursement Claims (including attorney fees and expenses) made by the Plan Administrator in connection with such Plan Administrator's duties shall be paid without any further notice to, or action, order, or approval of, the Bankruptcy Court in Cash from the Plan Administrator Assets, as applicable, if such amounts relate to any actions taken hereunder. To the extent that all First Lien Secured Claims are not paid or otherwise satisfied in full, the Plan Administrator's compensation shall be approved by the Required DIP Lenders and the Required Consenting Lenders.

   4.   Plan Administrator Expenses

All reasonable costs, expenses, and obligations incurred by the Plan Administrator in administering this Plan, the Reorganized Debtors, or in any manner connected, incidental, or related thereto, shall be incurred and paid from the Plan Administrator Assets.

The Debtors and the Plan Administrator, as applicable, shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court. In the event that the Plan Administrator is so ordered after the Effective Date, all costs and expenses of procuring any such bond or surety shall be paid for with Cash from the Plan Administrator Assets.

*B.*   *Wind Down*

On and after the Effective Date, the Plan Administrator will be authorized and directed to implement the Plan and any applicable orders of the Bankruptcy Court, and the Plan Administrator shall have the power and authority to take any action necessary to wind down the Debtors' Estates.

As soon as practicable after the Effective Date, the Plan Administrator shall: (a) cause the Debtors and the Reorganized Debtors, as applicable, to comply with, and abide by, the terms of the Asset Purchase Agreement and any other documents contemplated thereby; and (b) take such other actions as the Plan Administrator may determine to be necessary or desirable to carry out the purposes of the Plan.

The filing of the final monthly report (for the month in which the Effective Date occurs) and all subsequent quarterly reports shall be the responsibility of the Plan Administrator.

Notwithstanding anything to the contrary set forth in this Plan, the Plan Supplement, the Disclosure Statement or otherwise, at all times on and after the Effective Date through the date on which the DIP Facility Claims, the First Lien Secured Claims, and the Second Lien Claims are paid in accordance with Article II.C and Article III of the Plan, (a) the Debtors, the Reorganized Debtors, and the Plan Administrator shall maintain the cash management system of the Debtors (including all deposit accounts, as in effect immediately prior to the Effective Date); and (b) assume,

ratify, and reaffirm all agreements (including all deposit account control agreements) related to the deposit accounts of the Debtors, Reorganized Debtors, and Plan Administrator.

C.      *Exculpation, Indemnification, Insurance, and Liability Limitation*

The Plan Administrator and all professionals retained by the Plan Administrator, each in their capacities as such, shall be deemed exculpated and indemnified, except for fraud, willful misconduct, or gross negligence, in all respects by the Reorganized Debtors. The Plan Administrator may obtain, at the expense of the Reorganized Debtors, commercially reasonable liability or other appropriate insurance with respect to the indemnification obligations of the Reorganized Debtors. The Plan Administrator may rely upon written information previously generated by the Debtors.

Notwithstanding anything to the contrary contained herein, the Plan Administrator in its capacity as such, shall have no liability whatsoever to any party for the liabilities and/or obligations, however created, whether direct or indirect, in tort, contract, or otherwise, of the Debtors.

D.      *Tax Returns*

After the Effective Date, the Plan Administrator shall complete and file all final or otherwise required federal, state, and local tax returns for each of the Debtors and, pursuant to section 505(b) of the Bankruptcy Code, may request an expedited determination of any unpaid tax liability of such Debtor or its Estate, for any tax incurred during the administration of such Debtor's Chapter 11 Case, as determined under applicable tax laws.

E.      *Reserves Administered by the Plan Administrator*

The Plan Administrator shall establish Distribution Reserve Accounts for the purpose of paying certain Allowed Claims and satisfying expenses associated with the Wind Down of the Estates. The Plan Administrator shall establish such Distribution Reserve Accounts that the Debtors and the Reorganized Debtors deem reasonable and appropriate under the circumstances. The Debtors and the Reorganized Debtors reserve the right to amend the number and type of Distribution Reserve Accounts established pursuant to the Plan.

## ARTICLE VIII.
## PROCEDURES FOR RESOLVING DISPUTED CLAIMS AND INTERESTS

A.      *Disputed Claims Process*

After the Effective Date, each of the Debtors or the Reorganized Debtors shall have and retain any and all rights and defenses such Debtor had with respect to any Claim immediately before the Effective Date (unless such Claim is deemed Allowed pursuant to the Plan or the Confirmation Order). Except as expressly provided in the Plan or in any order entered before the Effective Date (including the Confirmation Order), no Claim shall become an Allowed Claim unless and until such Claim is deemed Allowed pursuant to the Plan or a Final Order, including the Confirmation Order (when it becomes a Final Order), allowing such Claim. For the avoidance of doubt, there is no requirement to file a Proof of Claim (or move the Court for allowance) to be an Allowed Claim under the Plan.

**All Proofs of Claim required to be filed by the Plan that are filed after the date that they are required to be filed pursuant to the Plan shall be disallowed and forever barred, estopped, and enjoined from assertion, and shall not be enforceable against any Reorganized Debtor, without the need for any objection by the Reorganized Debtors or any further notice to or action, order, or approval of the Bankruptcy Court.**

B.      *Claims Administration Responsibilities*

Except as otherwise specifically provided in the Plan, after the Effective Date, the Reorganized Debtors shall have the sole authority to: (a) file, withdraw, or litigate to judgment, objections to Claims or Interests; (b) settle or compromise any Disputed Claim or Interest without any further notice to or action, order, or approval by the Bankruptcy Court; and (c) administer and adjust the Claims Register to reflect any such settlements or compromises

without any further notice to or action, order, or approval by the Bankruptcy Court. For the avoidance of doubt, except as otherwise provided in the Plan, from and after the Effective Date, each Reorganized Debtor shall have and retain any and all rights and defenses such Debtor had immediately prior to the Effective Date with respect to any Disputed Claim or Interest, including the Causes of Action retained pursuant to Article IV.O of the Plan.

C.      *Estimation of Claims and Interests*

Before or after the Effective Date, the Debtors or the Reorganized Debtors, as applicable, may (but are not required to) at any time request that the Bankruptcy Court estimate any Disputed Claim or Interest that is contingent or unliquidated pursuant to section 502(c) of the Bankruptcy Code for any reason, regardless of whether any party previously has objected to such Claim or Interest or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction to estimate any such Claim or Interest, including during the litigation of any objection to any Claim or Interest or during the appeal relating to such objection. Notwithstanding any provision otherwise in the Plan, a Claim that has been expunged from the Claims Register, but that either is subject to appeal or has not been the subject of a Final Order, shall be deemed to be estimated at zero dollars, unless otherwise ordered by the Bankruptcy Court. In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim or Interest, that estimated amount shall constitute a maximum limitation on such Claim or Interest for all purposes under the Plan (including for purposes of distributions), and the relevant Reorganized Debtor may elect to pursue any supplemental proceedings to object to any ultimate distribution on such Claim or Interest.

D.      *Adjustment to Claims Register Without Objection*

Any duplicate Claim or Interest or any Claim or Interest that has been paid, satisfied, amended, or superseded may be adjusted or expunged on the Claims Register by the Reorganized Debtors without the Reorganized Debtors having to file an application, motion, complaint, objection, or any other legal proceeding seeking to object to such Claim or Interest and without any further notice to or action, order, or approval of the Bankruptcy Court.

E.      *Time to File Objections to Claims*

Any objections to Claims shall be Filed by the Reorganized Debtors on or before the Claims Objection Deadline, as such deadline may be extended from time to time.

F.      *No Distributions Pending Allowance*

Notwithstanding any other provision hereof, if any portion of a Claim or Interest is a Disputed Claim or Interest, as applicable, no payment or distribution provided hereunder shall be made on account of such Claim or Interest unless and until such Disputed Claim or Interest becomes an Allowed Claim or Interest.

G.      *Distributions After Allowance*

To the extent that a Disputed Claim or Interest ultimately becomes an Allowed Claim or Interest, distributions (if any) shall be made to the Holder of such Allowed Claim or Interest in accordance with the provisions of the Plan. As soon as reasonably practicable after the date that the order or judgment of the Bankruptcy Court allowing any Disputed Claim or Interest becomes a Final Order, the Distribution Agent shall provide to the Holder of such Claim or Interest the distribution (if any) to which such Holder is entitled under the Plan as of the Effective Date, without any interest to be paid on account of such Claim or Interest.

H.      *No Interest*

Interest shall not accrue or be paid on any Disputed Claim with respect to the period from the Effective Date to the date a final distribution is made on account of such Disputed Claim, if and when such Disputed Claim becomes an Allowed Claim.

I.      *Single Satisfaction of Claims*

Holders of Allowed Claims may assert such Claims against each Debtor obligated with respect to such Claims, and such Claims shall be entitled to share in the recovery provided for the applicable Class of Claims against each obligated Debtor based upon the full Allowed amount of such Claims.  Notwithstanding the foregoing, in no case shall the aggregate value of all property received or retained under the Plan on account of any Allowed Claim exceed 100 percent of the underlying Allowed Claim plus applicable interest, if any.

J.      *Tax Treatment of Claim Distribution Amounts*

Property deposited into any Claim distribution accounts described elsewhere in the Plan (but for the avoidance of doubt, not including the Professional Fee Escrow) will be subject to "disputed ownership fund" treatment under section 1.468B-9 of the United States Treasury Regulations.  All corresponding elections with respect to such accounts shall be made, and such treatment shall be applied to the extent possible for state, local, and non-U.S. tax purposes.  Under such treatment, a separate federal income tax return shall be filed with the IRS with respect to such accounts, any taxes (including with respect to interest, if any, or appreciation in property between the Effective Date and date of distribution) imposed on such accounts shall be paid out of the assets of such accounts (and reductions shall be made to amounts disbursed from such accounts to account for the need to pay such taxes).

# ARTICLE IX.
## SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS

A.      *Compromise and Settlement of Claims, Interests, and Controversies*

Pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided pursuant to the Plan, the provisions of the Plan shall constitute a good-faith compromise and settlement of all Claims, Interests, and controversies relating to the contractual, legal, and subordination rights that a Holder of a Claim or Interest may have with respect to any Allowed Claim or Interest, or any distribution to be made on account of such Allowed Claim or Interest.  The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims, Interests, and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtors, their Estates, and Holders of Claims and Interests and is fair, equitable, and reasonable.  In accordance with the provisions of the Plan, pursuant to Bankruptcy Rule 9019, without any further notice to or action, order, or approval of the Bankruptcy Court, after the Effective Date, the Reorganized Debtors may compromise and settle Claims against, and Interests in, the Debtors and their Estates and Causes of Action against other Entities.

B.      *Discharge of Claims and Termination of Interests*

Pursuant to section 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan or in any contract, instrument, or other agreement or document created pursuant to the Plan, the distributions, rights, and treatment that are provided in the Plan shall be in complete satisfaction, discharge, and release, effective as of the Effective Date, of Claims (including any Debtor Intercompany Claims resolved or compromised after the Effective Date by the Reorganized Debtors), Interests, and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against, and Interests in, the Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any liability (including withdrawal liability) to the extent such Claims or Interests relate to services performed by employees of the Debtors before the Effective Date and that arise from a termination of employment, any contingent or noncontingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not:  (1) a Proof of Claim based upon such debt or right is filed or deemed filed pursuant to section 501 of the Bankruptcy Code; (2) a Claim or Interest based upon such debt, right, or Interest is Allowed pursuant to section 502 of the Bankruptcy Code; or (3) the Holder of such a Claim or Interest has accepted the Plan.  Any default or "event of default" by the Debtors or Affiliates with respect to any Claim or Interest that existed immediately before or on account of the filing of the Chapter 11 Cases shall be deemed cured (and no longer continuing) as of the Effective Date.  The Confirmation

Order shall be a judicial determination of the discharge of all Claims and Interests subject to the Effective Date occurring.

C.      *Release of Liens*

**Except (a) with respect to the Liens securing (1) the Exit Facilities, (2) Other Secured Claims that are Reinstated pursuant to the Plan, and (3) obligations pursuant to Executory Contracts and Unexpired Leases assumed pursuant to the Plan, or (b) as otherwise provided in the Plan or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates and, subject to the consummation of the applicable distributions contemplated in the Plan, shall be fully released and discharged, at the sole cost of and expense of the Reorganized Debtors, and the Holders of such mortgages, deeds of trust, Liens, pledges, or other security interests shall execute such documents as may be reasonably requested by the Debtors or the Reorganized Debtors, as applicable, to reflect or effectuate such releases, and all of the right, title, and interest of any Holders of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Reorganized Debtor and its successors and assigns.**

D.      *Releases by the Debtors*

**Pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, on and after the Effective Date, each Released Party is deemed released and discharged by the Debtors, the Reorganized Debtors, and their Estates from any and all Causes of Action, including any derivative claims asserted on behalf of the Debtors, that the Debtors, the Reorganized Debtors, or their Estates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest, or that any Holder of any Claim or Interest could have asserted on behalf of the Debtors, based on or relating to, or in any manner arising from, in whole or in part:**

**(a)      the Debtors, the Debtors' restructuring efforts, intercompany transactions, the formulation, preparation, dissemination, negotiation, or filing of the Restructuring Support Agreement;**

**(b)      any Restructuring Transaction, contract, instrument, release, or other agreement or document (including providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Restructuring Support Agreement, the Disclosure Statement, or the Plan; or**

**(c)      the Chapter 11 Cases, the Disclosure Statement, the Plan, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of Securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement; or**

**(d)      any other act or omission, transaction, agreement, event, or other occurrence, in each case relating to any of the foregoing (a), (b), or (c), taking place on or before the Effective Date.**

**Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release any (i) post-Effective Date obligations of any party or Entity under the Plan, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan or (ii) claims or liabilities arising out of or relating to any act or omission of a Released Party that constitutes actual fraud.**

E.      *Releases by Holders of Claims and Interests of the Debtors*

**As of the Effective Date, each Releasing Party is deemed to have released and discharged each Debtor, Reorganized Debtor, and Released Party from any and all Causes of Action, including any derivative claims**

asserted on behalf of the Debtors, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part:

        (a)      the Debtors, the Debtors' restructuring efforts, intercompany transactions, the formulation, preparation, dissemination, negotiation, or filing of the Restructuring Support Agreement;

        (b)      any transaction that is part of the Restructuring Transactions, contract, instrument, release, or other agreement or document (including providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the order confirming the Plan in lieu of such legal opinion) created or entered into in connection with the Restructuring Support Agreement, the Disclosure Statement, or the Plan;

        (c)      the Chapter 11 Cases, the Disclosure Statement, the Plan, the filing of the Chapter 11 Cases, the pursuit of confirmation of the Plan, the pursuit of consummation of the Plan, the administration and implementation of the Plan, including the issuance or distribution of securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement; or

        (d)      any other act or omission, transaction, agreement, event, or other occurrence, in each case relating to any of the foregoing (a), (b), or (c),  taking place on or before the Effective Date.

Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release any (i) post-Effective Date obligations of any party or Entity under the Plan, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan, or (ii) claims or liabilities arising out of or relating to any act or omission of a Released Party that constitutes actual fraud.

*F.*      *Exculpation*

Except as otherwise specifically provided in the Plan, no Exculpated Party shall have or incur, and each Exculpated Party is hereby released and exculpated from any Cause of Action for any claim related to any act or omission in connection with, relating to, or arising out of, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, filing, or termination of the Restructuring Support Agreement and related prepetition transactions, the Disclosure Statement, the Plan, or any Restructuring Transaction, contract, instrument, release or other agreement or document (including providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Exculpated Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Disclosure Statement or the Plan, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance of Securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, except for claims related to any act or omission constitutes actual fraud, willful misconduct, or gross negligence, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan.  The Exculpated Parties have, and, upon completion of the Plan, shall be deemed to have participated in good faith and in compliance with the applicable laws with regard to the solicitation of, and distribution of, consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.

*G.*      *Injunction*

Except as otherwise expressly provided in the Plan or the Confirmation Order, all Entities that have held, hold, or may hold claims or interests that have been released pursuant to the Plan, shall be discharged pursuant to the Plan, or are subject to exculpation pursuant to the Plan, are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Reorganized Debtors, or the Released Parties:  (a) commencing or continuing in any manner any action or

**other proceeding of any kind on account of or in connection with or with respect to any such claims or interests; (b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such claims or interests; (c) creating, perfecting, or enforcing any lien or encumbrance of any kind against such Entities or the property or the estates of such Entities on account of or in connection with or with respect to any such claims or interests; (d) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such claims or interests unless such Entity has timely asserted such setoff right in a document filed with the Bankruptcy Court explicitly preserving such setoff, and notwithstanding an indication of a claim or interest or otherwise that such Entity asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (e) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims or interests released or settled pursuant to the Plan.**

H.      *Protection Against Discriminatory Treatment*

        In accordance with section 525 of the Bankruptcy Code, and consistent with paragraph 2 of Article VI of the United States Constitution, no Governmental Unit shall discriminate against any Reorganized Debtor, or any Entity with which a Reorganized Debtor has been or is associated, or deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, discriminate with respect to such a grant against, the Reorganized Debtors, or another Entity with whom the Reorganized Debtors have been associated, solely because such Reorganized Debtor was a Debtor under chapter 11, may have been insolvent before the commencement of the Chapter 11 Cases (or during the Chapter 11 Cases but before such Debtor was granted or denied a discharge), or has not paid a debt that is dischargeable in the Chapter 11 Cases.

I.      *Recoupment*

        In no event shall any Holder of Claims or Interests be entitled to recoup any Claim or Interest against any claim, right, or Cause of Action of the Debtors or the Reorganized Debtors, as applicable, unless such Holder actually has performed such recoupment and provided notice thereof in writing to the Debtors on or before the Confirmation Date, notwithstanding any indication in any Proof of Claim or Interest or otherwise that such Holder asserts, has, or intends to preserve any right of recoupment.

J.      *Reimbursement or Contribution*

        If the Bankruptcy Court disallows a Claim for reimbursement or contribution of an Entity pursuant to section 502(e)(1)(B) of the Bankruptcy Code, then to the extent that such Claim is contingent as of the Effective Date, such Claim shall be forever disallowed notwithstanding section 502(j) of the Bankruptcy Code, unless prior to the Effective Date (a) such Claim has been adjudicated as noncontingent, or (b) the relevant Holder of a Claim has filed a noncontingent Proof of Claim on account of such Claim and a Final Order has been entered determining such Claim as no longer contingent.

K.      *Term of Injunctions or Stays*

        Unless otherwise provided in the Plan or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases (pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court) and existing on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order) shall remain in full force and effect until the Effective Date.  All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

L.      *Document Retention*

        On and after the Effective Date, the Reorganized Debtors may maintain documents in accordance with their standard document retention policy, as may be altered, amended, modified, or supplemented by the Reorganized Debtors.

## ARTICLE X.
## CONDITIONS PRECEDENT TO THE EFFECTIVE DATE

*A.*      *Conditions Precedent to the Effective Date.*

It shall be a condition to the Effective Date that the following conditions shall have been satisfied or waived pursuant to Article X.B of the Plan:

1.      all financing agreements contemplated under the Restructuring Support Agreement, as applicable, shall have closed and be in full force and effect;

2.      the Restructuring Support Agreement shall continue to be in full force and effect;

3.      the Debtors shall have paid or reimbursed all reasonable and documented fees and expenses of the Consenting Lenders (as applicable) in connection with the Restructuring Transactions, including the reasonable and documented fees and expenses of the Ad Hoc Group Professionals;

4.      all of the Debtors' reasonable and documented fees and expenses, including those of (a) Kirkland & Ellis LLP, as counsel to the Debtors, (b) Guggenheim Securities, LLC, as financial advisor and investment banker to the Debtors; and (c) Alvarez & Marsal, Inc., as restructuring advisor to the Debtors, shall have been paid in full or amounts sufficient to pay Professional Fee Claims shall have been placed in the Professional Fee Escrow Account pending approval of the Professional Fee Claims by the Bankruptcy Court;[2]

5.      each document or agreement constituting the Definitive Documents shall be in form and substance consistent with the Restructuring Support Agreement and the Restructuring Term Sheet, and acceptable to the Required Consenting Lenders and the Required DIP Lenders;

6.      all governmental approvals and consents that are legally required for the consummation of the Restructuring Transactions shall have been obtained, not be subject to unfulfilled conditions and be in full force and effect, and all applicable waiting periods under the Hart-Scott-Rodino Antitrust Improvements Act of 1976, as amended, shall have expired;

7.      the Debtors shall have obtained all authorizations, consents, regulatory approvals, rulings, or documents that are necessary to implement and effectuate the Plan;

8.      all agreements or other arrangements by and among the Debtors and any of the Sponsors or their respective affiliates or related parties shall be terminated with no consideration payable in connection therewith as of the Effective Date.  For the avoidance of doubt, the Sponsors shall waive all their Claims against the Debtors (other than any funded debt claims);

9.      such other conditions precedent that are customary and otherwise requested to the Effective Date, as are customary and otherwise reasonably requested by the Required Consenting Lenders and the Required DIP Lenders; and

10.      the Bankruptcy Court shall have entered the Confirmation Order, in form and substance acceptable to the Required Consenting Lenders and the Required DIP Lenders, and the Confirmation Order shall not be stayed, modified, or vacated, and shall not be subject to any pending appeal, and the appeals period for the Confirmation Order shall have expired; *provided* that the requirement that the Confirmation Order not be subject to any pending appeal and the appeals period for the Confirmation Order shall have expired may be waived by the Required Consenting Lenders and the Required DIP Lenders.

---

[2]    For the avoidance of doubt, the Consenting Lenders and DIP Lenders reserve all rights to object to any such retentions or payments in accordance with applicable laws.

B.      *Waiver of Conditions Precedent*

The Debtors, with the consent of (a) the Consenting Lenders holding at least 65% of the aggregate outstanding principal amount of each of the Priority First Lien Claims and First Lien Claims that are held by Consenting Lenders and (b) the Required DIP Lenders, may waive any of the conditions to the Effective Date set forth in Article X.A of the Plan at any time without any notice to any other parties in interest and without any further notice to or action, order, or approval of the Bankruptcy Court, and without any formal action other than proceeding to confirm and consummate the Plan.

C.      *Substantial Consummation*

"Substantial Consummation" of the Plan, as defined in section 1101(2) of the Bankruptcy Code, with respect to any of the Debtors, shall be deemed to occur on the Effective Date with respect to such Debtor.

D.      *Effect of Non-Occurrence of Conditions to Consummation*

If the Effective Date does not occur with respect to any of the Debtors, the Plan shall be null and void in all respects with respect to such Debtor, and nothing contained in the Plan or the Disclosure Statement shall: (a) constitute a waiver or release of any Claims by or Claims against or Interests in such Debtors; (b) prejudice in any manner the rights of such Debtors, any Holders of a Claim or Interest, or any other Entity; or (c) constitute an admission, acknowledgment, offer, or undertaking by such Debtors, any Holders, or any other Entity in any respect.

## ARTICLE XI.
## MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN

A.      *Modification of Plan*

Subject to the limitations contained in the Plan and the Restructuring Support Agreement, the Debtors, with the consent of the Required Consenting Lenders and the Required DIP Lenders, reserve the right to modify the Plan prior to Confirmation and seek Confirmation consistent with the Bankruptcy Code and, as appropriate, not resolicit votes on such modified Plan.  Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions on modifications set forth in the Plan, the Debtors expressly reserve their rights to alter, amend, or modify materially the Plan, one or more times, after Confirmation, and, to the extent necessary, may initiate proceedings in the Bankruptcy Court to so alter, amend, or modify the Plan, or remedy any defect or omission, or reconcile any inconsistencies in the Plan, the Disclosure Statement, or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Plan.

B.      *Effect of Confirmation on Modifications*

Entry of the Confirmation Order shall constitute approval of all modifications to the Plan occurring after the solicitation thereof pursuant to section 1127(a) of the Bankruptcy Code and a finding that such modifications to the Plan do not require additional disclosure or resolicitation under Bankruptcy Rule 3019.

C.      *Revocation or Withdrawal of Plan*

Subject to the terms of the Restructuring Support Agreement and the consent of the Required Consenting Lenders and the Required DIP Lenders, the Debtors reserve the right to revoke or withdraw the Plan before the Confirmation Date and to file subsequent chapter 11 plans.  If the Debtors revoke or withdraw the Plan, or if the Confirmation Date or the Effective Date does not occur, then:  (a) the Plan will be null and void in all respects; (b) any settlement or compromise embodied in the Plan, assumption of Executory Contracts or Unexpired Leases effected by the Plan, and any document or agreement executed pursuant hereto will be null and void in all respects; and (c) nothing contained in the Plan shall (1) constitute a waiver or release of any Claims, Interests, or Causes of Action, (2) prejudice in any manner the rights of any Debtor or any other Entity, or (3) constitute an admission, acknowledgement, offer, or undertaking of any sort by any Debtor or any other Entity.

## ARTICLE XII.
## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, or related to, the Chapter 11 Cases and the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code, including jurisdiction to:

1.      allow, disallow, determine, liquidate, classify, estimate, or establish the priority, secured or unsecured status, or amount of any Claim or Interest, including the resolution of any request for payment of any Claim or Interest and the resolution of any and all objections to the secured or unsecured status, priority, amount, or allowance of Claims or Interests;

2.      decide and resolve all matters related to the granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Bankruptcy Code or the Plan;

3.      resolve any matters related to Executory Contracts or Unexpired Leases, including:  (a) the assumption, assumption and assignment, or rejection of any Executory Contract or Unexpired Lease to which a Debtor is party or with respect to which a Debtor may be liable and to hear, determine, and, if necessary, liquidate, any Cure Claims arising therefrom, including pursuant to section 365 of the Bankruptcy Code; (b) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed; and (c) any dispute regarding whether a contract or lease is or was executory or expired;

4.      ensure that distributions to Holders of Allowed Claims and Interests (as applicable) are accomplished pursuant to the provisions of the Plan and adjudicate any and all disputes arising from or relating to distributions under the Plan;

5.      adjudicate, decide, or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any applications involving a Debtor that may be pending on the Effective Date;

6.      enter and implement such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of (a) contracts, instruments, releases, indentures, and other agreements or documents approved by Final Order in the Chapter 11 Cases and (b) the Plan, the Confirmation Order, and contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan;

7.      enforce any order for the sale of property pursuant to sections 363, 1123, or 1146(a) of the Bankruptcy Code;

8.      grant any consensual request to extend the deadline for assuming or rejecting Unexpired Leases pursuant to section 365(d)(4) of the Bankruptcy Code;

9.      adjudicate, decide, or resolve any and all matters related to the Restructuring Transactions;

10.      adjudicate, decide, or resolve any and all matters related to enforcement of the Restructuring Support Agreement;

11.      issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with Consummation or enforcement of the Plan;

12.      resolve any cases, controversies, suits, disputes, Causes of Action, or any other matters that may arise in connection with the Consummation, interpretation, or enforcement of the Plan, the Disclosure Statement, the Confirmation Order, or the Restructuring Transactions, or any Entity's obligations incurred in connection with the foregoing, including disputes arising under agreements, documents, or instruments executed in connection with the Plan, the Disclosure Statement, the Confirmation Order, or the Restructuring Transactions;

13.      hear, determine, and resolve any cases, matters, controversies, suits, disputes, or Causes of Action in connection with or in any way related to the Chapter 11 Cases, including:  (a) with respect to the repayment or return of distributions and the recovery of additional amounts owed by the Holder of a Claim or an Interest for amounts not timely repaid pursuant to Article VI.J.1 of the Plan; (b) with respect to the releases, injunctions, and other provisions contained in Article IX of the Plan, including entry of such orders as may be necessary or appropriate to implement such releases, injunctions, and other provisions; (c) that may arise in connection with the Consummation, interpretation, implementation, or enforcement of the Plan, the Confirmation Order, and, subject to any applicable forum selection clauses, contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan; or (d) related to section 1141 of the Bankruptcy Code;

14.      enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

15.      consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

16.      hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

17.      enter an order or Final Decree concluding or closing the Chapter 11 Cases;

18.      enforce all orders previously entered by the Bankruptcy Court; and

19.      hear any other matter not inconsistent with the Bankruptcy Code.

## ARTICLE XIII.
## MISCELLANEOUS PROVISIONS

A.      *Immediate Binding Effect*

Subject to Article X.A hereof and notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan and Definitive Documentation (including any such Definitive Documentation included in the Plan Supplement) shall be immediately effective and enforceable and deemed binding upon the Debtors, the Reorganized Debtors, and any and all Holders of Claims or Interests (irrespective of whether such Claims or Interests are deemed to have accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan, each Entity acquiring property under the Plan, and any and all non-Debtors to Executory Contracts and Unexpired Leases with the Debtors.

B.      *Additional Documents*

On or before the Effective Date, the Debtors may file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan and the Restructuring Support Agreement, which shall be in form and substance acceptable to the Required Consenting Lenders.  The Debtors or the Reorganized Debtors, as applicable, and all Holders of Claims and Interests receiving distributions pursuant to the Plan and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

C.      *Statutory Fees*

All fees payable pursuant to section 1930(a) of the Judicial Code, including fees and expenses payable to the U.S. Trustee, as determined by the Bankruptcy Court at a hearing pursuant to section 1128 of the Bankruptcy Code, will be paid by each of the applicable Reorganized Debtors for each quarter (including any fraction thereof) until the applicable Chapter 11 Case of such Reorganized Debtor is converted, dismissed, or closed, whichever occurs first.

D.      *Reservation of Rights*

Except as expressly set forth in the Plan, the Plan shall have no force or effect unless the Bankruptcy Court has entered the Confirmation Order.  None of the filing of the Plan, any statement or provision contained in the Plan, or the taking of any action by any Debtor with respect to the Plan, the Disclosure Statement, or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of any Debtor with respect to the Holders of Claims or Interests prior to the Effective Date.

E.      *Successors and Assigns*

The rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign, Affiliate, officer, director, agent, representative, attorney, beneficiaries, or guardian, if any, of each Entity.

F.      *Service of Documents*

All notices, requests, and demands to or upon the Debtors to be effective shall be in writing (including by facsimile transmission) and, unless otherwise expressly provided in the Plan, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

**If to the Debtors or Reorganized Debtors:**

California Pizza Kitchen, Inc.
12181 Bluff Creek Drive, 5th Floor
Playa Vista, California 90094
Attention:  James Hyatt
Email:  jhyatt@cpk.com

With copies to:

Kirkland & Ellis LLP
601 Lexington Avenue
New York, New York, 10022
Facsimile:  (212) 446-4900
Attention:  Joshua A. Sussberg, P.C., Matthew C. Fagen, and Francis Petrie
Email:  joshua.sussberg@kirkland.com
            matthew.fagen@kirkland.com
            francis.petrie@kirkland.com

-and-

Jackson Walker L.L.P.
1401 McKinney Street, Suite 1900
Houston, Texas 77010
Telephone: (713) 752-4200
Facsimile:  (713) 752-4221
Attention:  Matthew D. Cavenaugh
Email:  mcavenaugh@jw.com

**If to the Consenting Lenders:**

To each Consenting Lender at the addresses or e-mail addresses set forth below the Consenting Lender's signature page to the Restructuring Support Agreement (or to the signature page to a Joinder or Transfer Agreement in the case of any Consenting Lenders that become a party thereto after the Restructuring Support Agreement effective date).

47

With copies to:

Gibson, Dunn & Crutcher LLP
200 Park Avenue
New York, New York 10166
Attention:  David M. Feldman, J. Eric Wise, and Alan Moskowitz
Email:  dfeldman@gibsondunn.com
          ewise@gibsondunn.com
          amoskowitz@gibsondunn.com

**If to the Consenting Sponsors:**

To each Consenting Sponsor at the addresses or e-mail addresses set forth below the Consenting Sponsor's signature page to the Restructuring Support Agreement.

With copies to:

Golden Gate Capital
One Embarcadero Center, 39th Floor
San Francisco, California 94111
Attention:  Neale Attenborough and Stephen Oetgen
Email:  neale@goldengatecap.com
          soetgen@goldengatecap.com

After the Effective Date, the Reorganized Debtors shall have the authority to send a notice to Entities that continue to receive documents pursuant to Bankruptcy Rule 2002 requiring such Entity to file a renewed request to receive documents pursuant to Bankruptcy Rule 2002.  After the Effective Date, the Reorganized Debtors are authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to those Entities who have filed such renewed requests.

G.    *Entire Agreement*

Except as otherwise indicated, and without limiting the effectiveness of the Restructuring Support Agreement, the Plan (including, for the avoidance of doubt, the Plan Supplement) supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

H.    *Plan Supplement Exhibits*

All exhibits and documents included in the Plan Supplement are incorporated into and are a part of the Plan as if set forth in full in the Plan.  After the exhibits and documents are filed, copies of such exhibits and documents shall be made available upon written request to the Debtors' counsel at the address above or by downloading such exhibits and documents from the Debtors' restructuring website https://cases.primeclerk.com/CPK or the Bankruptcy Court's website at www.sdtx.uscourts.gov/bankruptcy.  Unless otherwise ordered by the Bankruptcy Court, to the extent any exhibit or document in the Plan Supplement is inconsistent with the terms of any part of the Plan that does not constitute the Plan Supplement, such exhibit or document in the Plan Supplement shall control.  The documents in the Plan Supplement are an integral part of the Plan and shall be deemed approved by the Bankruptcy Court pursuant to the Confirmation Order.

I.    *Non-Severability*

Except as set forth in Article IX of the Plan, the provisions of the Plan, including its release, injunction, exculpation and compromise provisions, are mutually dependent and non-severable.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan is:  (a) valid and enforceable pursuant to its terms; (b) integral to the Plan; and (c) non-severable and mutually dependent.

48

*J.*     *Votes Solicited in Good Faith*

Upon entry of the Confirmation Order, the Debtors will be deemed to have solicited votes on the Plan in good faith and in compliance with the Bankruptcy Code, and pursuant to section 1125(e) of the Bankruptcy Code, the Debtors, the Consenting Term Loan Lenders, and each of their respective Affiliates, agents, representatives, members, principals, shareholders, officers, directors, employees, advisors, and attorneys will be deemed to have participated in good faith and in compliance with the Bankruptcy Code in the offer, issuance, sale, and purchase of Securities offered and sold under the Plan and any previous plan, and, therefore, no such parties, individuals, or the Reorganized Debtors will have any liability for the violation of any applicable law, rule, or regulation governing the solicitation of votes on the Plan or the offer, issuance, sale, or purchase of the Securities offered and sold under the Plan and any previous plan.

*K.*     *Waiver or Estoppel*

Each Holder of a Claim or an Interest shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim or Interest should be Allowed in a certain amount, in a certain priority, Secured or not subordinated by virtue of an agreement made with the Debtors or their counsel, or any other Entity, if such agreement was not disclosed in the Plan, the Disclosure Statement, the Restructuring Support Agreement, or papers filed with the Bankruptcy Court prior to the Confirmation Date.

*L.*     *Closing of Chapter 11 Cases*

The Reorganized Debtors shall, promptly after the full administration of the Chapter 11 Cases, file with the Bankruptcy Court all documents required by Bankruptcy Rule 3022 and any applicable order of the Bankruptcy Court to close the Chapter 11 Cases.

Dated:  July 30, 2020

Respectfully submitted,

By: */s/ James Hyatt*
Name: James Hyatt
Title: Chief Executive Officer, California Pizza Kitchen, Inc.